**WIFE, B. T. L., Plaintiff,**

**v.**

**HUSBAND, H. A. L., Defendant.**

Court of Chancery of Delaware,
New Castle.

Feb. 2, 1972.

Richard Allen Paul, of Lindh & Biden, Wilmington, for plaintiff.

John T. Gallagher, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant.

SHORT, Vice Chancellor:

This is an action by a wife against her former husband for the specific performance of certain provisions of a separation agreement pertaining to child support and maintenance of the parties' marital domicile. The wife brings this action individually and as guardian ad litem for the couple's two children, ages 10 and 13. The husband has counterclaimed for mitigation of the strict terms of the agreement alternatively through a decree of partial specific performance, reformation, or separate maintenance, averring that the agreement presently operates oppressively and in a manner not originally contemplated by the parties.

The parties executed the separation agreement while living apart on February 4, 1969. The controversy out of which this proceeding arises concerns the obligations incurred by the husband under paragraphs II and IX(b) of the agreement.

Paragraph II provides:

"Commencing July 1st, 1970, so long as wife has not remarried or either of said children reside in the house, husband shall pay one-half of the cost of neces-sary replacement, repair, and maintenance of the house, fixtures, and appliances therein, and half the monthly mortgage payments."

Paragraph IX provides:

"(b) July 1, 1970, Husband will pay to Wife for the support and maintenance of the children of the parties, whichever of the following two sums is greater:

$800.00 or 40 per cent of net income, until the youngest child reaches its 21st birthday; thereafter if Wife be not remarried—a flat 20% of net income for support and maintenance of Wife."

At the commencement of trial the defendant (husband) conceded the authenticity of the agreement. The parties further stipulated that the husband was in arrears with respect to his share of payments for maintenance of the marital domicile, and that he had not raised his support payments to $800 monthly as specified in the agreement. At that time the husband was voluntarily paying $600 monthly which he contends was all his finances would allow. It thus being clear that the husband is in substantial default, consideration will be limited to the merits of the defenses raised by him.

The facts are these: The parties were married in August of 1948. Subsequently, the husband acquired a medical license and engaged in the general practice of medicine in suburban New Castle County for 10 years. On July 1, 1967, after some discussion, the husband gave up general practice for psychiatric training at a significant reduction in earnings. The parties separated on September 30 of the same year. At various times during 1968 the husband consulted an attorney for the purpose of obtaining a divorce. Initially, the husband was advised that he had no grounds to bring a divorce action. When it became apparent that due to a favorable change in the law that the husband could prevail in obtaining a divorce from the plaintiff he filed an action in January 1969. The husband testified that his motivation for a divorce at

this particular time was an existing relationship with another woman. The possibility of reconciliation from the husband's point of view was extremely remote if not non-existent. The wife's attitude toward a divorce may be characterized as indifferent, her prime consideration being that she and the children be provided for in the event of divorce. In contemplation of this divorce the separation agreement was executed. Thereafter the husband was granted an uncontested divorce on the grounds of incompatibility.

The record indicates that in the drafting of the agreement the husband's assumption of the support obligations therein was premised on his anticipation that after a short transitional period his institutional earnings would equal his income from private practice. This expectation has been largely realized as the husband's current salary of $24,500 from the University of Delaware (plus the small supplementary income from his limited private practice) compares favorably with $18,608.25 net profit earned in his last full year of practice. It thus appears that the financial strain that the husband now bears under the agreement results not from a miscalculation of future available resources, but rather from the accrual of obligations which might have been provided for at the time of contracting. It is observed in this connection that a short time after the divorce decree became final the husband remarried and is now responsible for the support of his new wife and one year old child of this remarriage. In addition, the husband's financial condition has been depleted because of an adverse tax ruling denying him an anticipated deduction on the payments made for the support of the children.

The first defense raised by the husband is that the agreement is void on grounds of illegality because premised on a divorce consideration and violative of a public policy encouraging the stability of the family. Specifically, he alleges an oral understanding between the spouses whereby the husband assumed the terms of the settlement as a condition precedent to the wife's agreement not to contest the divorce. As evidentiary support for this contention, the husband notes that execution of the agreement was "on the eve" of the divorce hearing. Finally, the husband states that at the time he signed the agreement, he had an "ideation" that the wife was prepared to contest the divorce and this presumably had a coercive effect upon him. On the other hand, it appears that the husband was advised by an attorney and was aware that under the amended Delaware law the wife could not effectively defend an action brought on the grounds of incompatibility. Moreover, both the wife and her attorney deny that the divorce was the bargained for consideration for the agreement.

Generally stated, agreements between husband and wife relating to support or the adjustment of property rights will be upheld, though in contemplation of divorce, if not directly conducive to the procurement of a divorce and free of collusion. 24 Am.Jur., Divorce and Separation, § 892; Miller v. Miller, 284 Pa. 414, 131 A. 236; Hoyt v. Hoyt, 213 Tenn. 117, 372 S.W.2d 300. The law thus manifests a preference for the private settlement of marital obligations at the time of separation. Of course, where one spouse agrees not to contest a divorce action, irrespective of the availability of any defense, the contract is unenforceable. Clark, Law of Domestic Relations, Sec. 16.4; Staedler v. Staedler, 6 N.J. 380, 78 A.2d 896; Zlotziver v. Zlotziver, 355 Pa. 299, 49 A.2d 779. But the evidence here adduced is wholly insufficient to bring the case within that principle. In line with the policy favoring family settlements, even where made in contemplation of divorce, in order to render an agreement unenforceable some overt manifestation of mutual assent with respect to a bargained for divorce must appear. The substance of husband's complaint is that by a combination of his wife's indifference and his own anxiety to expedite the divorce he entered into a bad

bargain. Such an allegation does not contain the requisite mutual assent to constitute a bargained for divorce.

The husband places heavy reliance upon Viles v. Viles, 14 N.Y.2d 365, 251 N.Y.S.2d 672, 200 N.E.2d 567 wherein a separation agreement was held invalid as having a direct tendency to dissolve the marriage in light of a collateral oral agreement by which defendant reimbursed his wife for expenses incurred in making a general appearance in a Virgin Island divorce proceeding. The *Viles* decision was over a strong dissent and has received unfavorable comment. 10 Villanova L.Rev. 171. The better reasoned cases hold that where the continuation of the marital status is no longer a viable alternative, public policy is not subserved by refusing to enforce the private contractual arrangements of the spouses. Yates v. Yates, 183 Misc. 934, 51 N.Y.S.2d 135 (1954); Hill v. Hill, 23 Cal. 2d 82, 142 P.2d 417 (1943). In the instant action defendant's own persistence and determination suggest the inevitability of divorce and total marital breakup. Under these circumstances, the *Viles* rationale is not pertinent. Accordingly, in the absence of any overriding domestic considerations, collusion, or duress, there is no merit in husband's defense.

 Next, husband argues that the agreement never contemplated the actual situation and enforcement would work great injury on the defendant and prejudice innocent parties. Husband's reference in this connection is obviously to the obligations assumed by his subsequent remarriage and the increased burden placed upon him by an unforeseen adverse tax ruling, rather than any mutual mistakes as to the husband's estimated future income. Though a financial strain may now confront the husband, it is well settled that an unfavorable change in economic circumstance is not a valid defense to an action for the specific performance of a separation agreement, unless so provided in the agreement. Dumel v. Dumel, 42 Del.Ch. 465, 213 A.2d 859; Kaiser v. Kaiser, 290 Minn. 173, 186 N.W.2d 678. The husband's obligations under the agreement here are not made subject to changed circumstances. If such a rule seems on first impression unduly harsh, it should be noted that neither of the changed circumstances relied upon were unforeseeable or unavoidable. Since husband's first family is no more than adequately provided for I do not see how enforcement of this agreement prejudices husband's second family; rather it merely illustrates that a given quantum of resources will go further in support of one family than two.

 The husband challenges the fairness of the settlement. He argues that the agreement lacks mutuality of obligation in that the child support payments may be increased at any time as the best interests of the children dictate. The Supreme Court has held in a proceeding to modify child support obligations under a separation agreement that where the separation agreement is consistent with the best interests of the child it is controlling, and that in any event it cannot be ignored. G.W.F. v. G. P.F., Del.Supr., 271 A.2d 38. In light of this limitation on the modifiability of child support in a separation agreement the husband's contention that there exists no mutuality of obligation is without merit. Nor is there unfairness in the agreement judged by factors existing at the time of its execution. Pomerance v. Pomerance, Sup., 68 N.Y.S.2d 182 (1946). It is, of course, true that Chancery will not enforce a contract that is obviously unfair or oppressive. Gray Co. v. Alemite Corp., 20 Del.Ch. 244, 174 A. 136. Here, however, the husband committed himself (in addition to certain educational and medical expenses of the children) to payments of $800 plus the assumption of one-half the mortgage payments as to which he retains an equity. He thus retained approximately 40% of his net income for his own support, with the remainder distributed among his three dependents. While the husband's financial situation may have deteriorated it

cannot be said that the settlement was unreasonable at its inception.

Husband contends that the agreement is vague and unclear in that (1) a literal application of the language of Paragraph II would permit either of his children to reside in the house beyond the age of 21 and subject husband to pay maintenance costs indefinitely, and (2) Paragraph IX provides for support payments to the wife only after the youngest child becomes 21. While such provisions may be unusual in separation agreements neither is unclear or vague.

An order may be submitted requiring defendant to specifically perform the agreement of February 4, 1969 according to its terms.