HUSBAND B. W. D., Petitioner
Below, Appellant,

v.

WIFE B. A. D., Respondent
Below, Appellee.

Supreme Court of Delaware.

Submitted June 16, 1981.

Decided Aug. 26, 1981.

Revised Oct. 20, 1981.

Charles K. Keil (argued), of Bayard, Brill & Handelman, P. A. and Roderick R. McKelvie, of Robinson, McKelvie & Geddes, Wilmington, for petitioner-appellant.

Alene Berkowitz (argued) and Gerald Z. Berkowitz, of Knecht, Greenstein, Schagrin & Berkowitz, Wilmington, for respondent-appellee.

Before DUFFY, McNEILLY, QUILLEN and HORSEY, JJ., constituting the Court en Banc.

PER CURIAM:

This is an appeal from a Family Court order dividing marital property and refusing to terminate, suspend or decrease a prior alimony award.

As we analyze this case, there are three issues: Issue I, whether the unqualified award to the wife of a ring as part of the marital property division was proper; Issue II, whether the previous award of alimony should be automatically terminated or suspended during a period of cohabitation by the wife with a male friend; and Issue III, whether the amount of alimony should be modified due to the circumstances of the wife's current living arrangement.

## I

As to the first issue, the Court is unanimous in affirming the unqualified award of the ring to the wife.

Husband and wife, married on June 4, 1949, were divorced on December 15, 1977. On November 15, 1978, the Family Court divided their marital property and awarded the wife alimony. The wife was also awarded a ring given to her by the husband, the Family Court finding the ring to be a gift and not marital property. Upon appeal to this Court, the wife's counsel conceded that the ring was marital property. We, accordingly, remanded for further determination. *Husband B. W. D. v. Wife B. A. D.*, Del.Supr., 405 A.2d 123 (1979). Upon remand, the Family Court again awarded the ring to the wife, although this time as part of the marital property division.

■ The award on remand was made without a finding of value. Given this Court's statements in *Husband R. T. G. v. Wife G. K. G.*, Del.Supr., 410 A.2d 155, 159 (1979), the husband asserts that this failure amounts to an error of law requiring reversal. He also contends that the Family Court abused its discretion in awarding the wife the entire value of the ring, whatever the value. Under the circumstances of this case, however, we find no error. The Family Court had a range of estimated values before it when it considered other factors such as: the manner of the ring's acquisition; the wife's age, limited skills, and lack of employability; the husband's "vastly superior" ability to acquire future income and capital; the length of the marriage; and the ten year period, without interest, before the wife receives full payment for her share of the marital settlement. See 13 *Del.C.* §§ 1513(a)(1), (a)(3), (a)(5), and (a)(9). Upon our review of the Trial Court's consideration of the factors above, we find no abuse of discretion in awarding the wife the ring, whatever its value within the evidentiary range. The highest valuation for the ring was just in excess of $30,000.00, a valuation almost two years after the divorce. The total marital property value, excluding the ring, was $150,000.00, of which the wife was originally awarded 50%. Even assuming the highest valuation offered to be the ring's actual value, and ignoring the effect of inflation on other assets, the wife's share of the marital property would increase only to 58% of the whole. That amount, in this case and in light of the nature of this asset and its origin, we uphold as within the Trial Court's discretion. The decision of the Family Court is unanimously affirmed as to the ring.

## II

The Family Court, at the hearing after remand, also considered new matters, including the husband's petition to terminate alimony, the second issue properly raised on appeal. The basis of the husband's appeal is that the wife was, and apparently is, sharing living quarters with a male friend. The Family Court stated that cohabitation, in and of itself, would not operate to terminate alimony, although it might "constitute a substantial change of circumstances under 13 *Del.C.* § 1519(a)(4)". The Family Court then concluded that no such changes of circumstances existed and, accordingly, did not terminate, suspend nor decrease the alimony award.

The husband now argues that the Family Court erred in ruling the wife's cohabitation was an insufficient independent basis for termination of alimony. The four Justices sitting on this case are divided equally on this issue. Two Justices (Justice McNeilly and Justice Quillen) agree with the Family Court's determination that the question to be determined is whether there has been "a real and substantial change of circumstances". Two Justices (Justice Duffy and Justice Horsey), on the other hand, find that alimony should be suspended during the period of this cohabitation. See separate opinions on Issue II. Accordingly, we affirm. *Massey-Ferguson, Inc. v. Wells*, Del.Supr., 421 A.2d 1320 (1980).

## III

Given the affirmance on Issue II, and in consequence thereof turning to Issue III,

three Justices (Justice Duffy, Justice Quillen and Justice Horsey) find that the Family Court's determination that there has been no "showing of real and substantial change of circumstances" is clearly erroneous. On the basis of the views of this three Justice majority, the Court directs modification of the alimony award during the period of this cohabitation by a reduction to five hundred dollars per month. Justice McNeilly dissents and would affirm the decision below on Issue III. See separate opinions on Issue III.

### Conclusion

Insofar as the decision of the Family Court awarded the ring outright to the wife as part of the property division and insofar as the decision refused to terminate or suspend alimony, it is affirmed. The decision is modified, however, by a reduction of the alimony from $1,000.00 per month to $500.00 but only during the wife's period of cohabitation with her male friend. Any subsequent modification, however, must be by formal application wherein all relevant facts can be considered.

Opinion of McNEILLY, Justice and QUILLEN, Justice, on Issue II.

■ As noted in the *per curiam* opinion, in our view, the Court should affirm the Family Court's determination that the cohabitation in question is an insufficient basis for terminating or suspending alimony.

To hold that cohabitation, in and of itself, is sufficient to stop alimony payments appears to us to be flawed in two respects. First, if absolute rules are desired, this matter would better be specifically answered by the General Assembly. Second, in this area of family law, and without a legislative judgment, it seems to us that absolutes are not to be encouraged. There obviously could be varying degrees of "cohabitation", pressing for desirably flexible determinations concerning alimony. Moreover, whether the threshold definition of cohabitation (whatever that may be) is met could be the subject of great contention in innumerable conceivable disputes. Yet this elusive concept becomes crucial if, once cohabi-

tation is found, alimony automatically ceases *regardless* of other countervailing circumstances that might be attendant to the situation. We think the game is not worth the candle. The parties are after all divorced. Viewed practically, it seems to us that the flexible course followed below is the better one and the one dictated by the statute. If cohabitation exists *and* the circumstances are consequently really and substantially changed from the time of the original alimony award, the alimony may be "modified or terminated". See § 1519(a). Stated differently, there is no pragmatic need for a broad rule of termination that would doubtless lead to unharmonious exceptions, especially when § 1519(a)(4), alone, provides a more-than-adequate means of spreading oil upon the troubled waters arising when alimony and cohabitation meet at sea. Compare *Mitchell v. Mitchell*, Me. Supr., 418 A.2d 1140 (1980) and *Grossman v. Grossman*, N.J.Super.Ch.Div., 128 N.J.Super. 193, 319 A.2d 508 (1974).

Opinion of DUFFY, Justice, and HORSEY, Justice:

We join in the Court's determination that the respondent (wife) is entitled to retain the diamond ring and that a change should not otherwise be made in the distribution of marital property.

Given the affirmance of the Family Court's order by an equally divided Court, and for that reason only, we agree as to issue III that the Family Court's determination that there has been no showing of real and substantial change of circumstance is clearly erroneous; and we concur in the reduction of husband's alimony during the period of such cohabitation to $500.

\* \* \* \* \* \*

We turn now to the most significant issue in the case, that is, issue II as stated above.

The Family Court ruled that as to respondent's cohabitation with a man to whom she is not related by a ceremonial marriage, it is "settled law in [that] Court that the fact of cohabitation with a person of opposite sex is not, in and of itself, grounds to

terminate an award of alimony but *may* constitute a substantial change of circumstances under 13 Del.C. § 1519(b) [sic] (4)."[1] (emphasis in original).

Unless and until that ruling is changed by this Court, it appears that the Family Court will continue to regard "cohabitation" (after a divorce) as only a monetary factor to be considered when the amount of an alimony award is under review. The Court's opinion makes that plain by regarding the wife's relationship to her cohabiter as one of "sharing expenses with a roommate." In our judgment, that is regrettable because it permits a fraud on the law and the case provides a procedural guide to accomplish it.

In Delaware, the right to alimony is created only by statute and it is the public policy of this State, as expressed in the statutory plan, to terminate alimony upon remarriage of the recipient.

Specifically, the right to alimony in a divorce action is created by 13 *Del.C.* § 1512(a), which provides that "[t]he Court may grant alimony for a dependent party" under certain conditions.[2] And § 1519(b) directs that,

> "[u]nless otherwise agreed by the parties in writing and expressly provided in the [divorce] decree [procedures which are not present in this case], the obligation to pay future alimony is terminated upon the death of either party or the *remarriage of the party receiving alimony.*" (emphasis added).

That provision is mandatory and the General Assembly has not made an exception to it based on income, assets, health, need or any other factor of any kind. In short, upon remarriage of a party receiving alimony the Legislature, expressing State policy, has said that the right to alimony ends. And

the corollary, of course, is that a person paying alimony has no duty to pay more alimony after the recipient has remarried.

The record in this case affirmatively shows that the respondent has been living with her "roommate" (to use the Trial Judge's term) continuously since October 1978. In December 1978 the roommate gave respondent a gold "friendship ring" that she wears on her wedding-ring finger. They lived together in an apartment until September 1979, when they moved to a four-bedroom home that the roommate had purchased.

Neither cohabiter has dated anyone else since they began living together. They have had sexual relations. They sleep together, eat together, go out together, vacation together. Respondent and her roommate share the expenses of furnishing the home, maintaining it, and of their food costs and vacations. All of the respondent's tangible property is in the home and she shares it with her roommate. She is the beneficiary of a $75,000 insurance policy on the roommate's life.

It is apparent that the relationship, shown so positively in this case, is, in all respects, a *de facto* marriage which needs only a ceremony to bring it under § 1519(b) —and an end to the respondent's alimony. But, under the Family Court's ruling, as long as the ceremony is avoided, the respondent has all the benefits of cohabitation (in the *de facto* marriage) while she continues to enjoy the alimony provided by her first husband. That seems to us to be a fraud on the Statute which terminates alimony upon remarriage and, clearly, it is unfair to the former spouse who is being required by the Court to help underwrite the new relationship.[3]

---

1. 13 *Del.C.* § 1519(a)(4) provides as follows:
   "(a) A decree or separate order entered under § 1518 of this title may be modified or terminated only as follows:

   .    .    .    .    .

   (4) Alimony or any other relief awarded, only upon a showing of real and substantial change of circumstances."

2. Indeed one express purpose of the Divorce and Annulment Act is "[t]o award alimony . . . to a dependent party *but only during the continuance of such dependency,*" 13 *Del.C* § 1502(5) (emphasis added).

3. As to procedure, the Family Court's ruling shows the benefit which cohabiters can derive from careful "bookkeeping" of household, vacation, personal and other expenses. Here, the

This Court has held that under the governing Statute the Family Court has broad powers in determining to what extent alimony is to be awarded. See, for example, *R. E. T. v. A. L. T.*, Del.Supr., 410 A.2d 166 (1979). Plainly, those powers and the judicial discretion which goes with them are equitable in nature. Compare the statutory support provisions directing the Family Court to consider the "general equities inherent in the situation", 13 *Del.C.* § 514(3), and authorizing that Court to "[e]nter such—orders as the Court of Chancery heretofore possessed the power to enter." 13 *Del.C.* § 513(6). And under long settled principles a court of equity looks to the substance of matters, not the form thereof. 27 *Am.Jur.*2d Equity § 127, 2 *Pomeroy's Equity Jurisprudence* § 378 (5 ed.)

We would reverse the Family Court's determination that cohabitation is not a sufficient basis for suspending or terminating alimony. Under the undisputed facts of this case, and looking to the substance of the relationship between respondent and her roommate, we would conclude that the cohabitation proved amounts to a *de facto* marriage and is such a change of circumstance under § 1519(a)(4) to warrant suspension of the alimony award to avoid a fraud on the Statute. Specifically, we would suspend the husband's duty to pay alimony during the time when his former wife is cohabiting with another man under the circumstances of this case. While an open end "commitment" between spouses implicitly arises from a ceremonial marriage, the "commitment" between respondent and her roommate is at least coextensive with the period in which they participate in the sharing shown in the record before the Court. And, under our view, the suspension of alimony would last only as long as such cohabitation continues. In short, the first husband's duty to pay alimony would be suspended only as long as the

respondent's commitment to her roommate continues.

As to Issue III, QUILLEN, Justice, for the majority:

■ While it is not necessary for the purposes of this opinion to detail the relationship of the wife with her male friend, it appears that the relationship is akin to marriage in every respect (including a "friendship ring" and life insurance) except permanent commitment and legal duty. The Family Court was not aware of the living arrangement when alimony was originally fixed. The wife's male companion pays the mortgage and real estate taxes in their entirety and other expenses are shared. Obviously, the wife is not incurring the degree of housing costs originally contemplated by the Family Court. A "real and substantial change of circumstances" has occurred and the contrary finding by the Court below was clearly erroneous. 13 *Del.C.* § 1519(a). It was an abuse of discretion not to reduce the alimony award during this period of unmarried cohabitation.

While there is no precise dollar answer, we note the husband and his second wife jointly earn approximately $53,000.00 per year ($45,000.00 plus $8,000.00). The wife's male friend earns in excess of $40,000.00. After a transfer of $12,000.00 per year in alimony, the husband's household has approximately $41,000.00 per year and the wife's in excess of $52,000.00. While we recognize this gross income analysis is rough, we find the situation cries for some correction and, giving full range to the wife's needs and the views of the Court below, we still do not find alimony in excess of $6,000.00 per year justifiable during the period of this unmarried cohabitation.

Accordingly, the alimony award is modified by reducing the amount to $500.00 per month during the period of this cohabitation, said modification to be effective at the

respondent's roommate logged such expenses, charged the respondent with her "share" and thus provided continuing proof of the wife's "dependency" on her first husband. To the extent that the roommate provided for respondent, her dependency on the first husband

would have been reduced. In other words, charging expenses to the wife, as the Court's opinion shows, will continue her dependency on her former spouse and thus support the case for continuing alimony.

due date of the first monthly payment after the date of the mandate in this appeal. The burden to increase this modified award is by formal application to the Family Court after this Court's mandate and rests on the first wife. Furthermore, while we do not make the modification retroactive, we note that the husband under the current Family Court order, in light of our views expressed in this opinion, has been effectively over-paying his first wife for a substantial period of time. We note specifically that the first wife has been on notice that the Family Court order was subject to appellate review since the date of the filling of this appeal, May 2, 1980. In any subsequent application by the first wife to increase alimony, the Family Court should consider these facts as part of the equitable mix.

As to Issue III, McNEILLY, Justice, dissenting:

Because I believe that the majority, in modifying the Family Court's alimony award, has exceeded the proper bounds of appellate review on the facts of this case, I must respectfully dissent. In my opinion, the only question before the Court below concerning alimony was whether the wife's "cohabitation" situation (characterized factually by the Family Court as more like a roommate type relationship than a marital relationship) constituted a "real and substantial change of circumstances" under 13 *Del.C.* § 1519(a)(4) sufficient to warrant reduction of the prior $1,000.00 per month alimony award. It cannot be disputed that the Family Court in its written opinion delineated and considered all pertinent financial factors of both parties in an orderly and logical deductive process before concluding that the wife's living arrangement did not warrant reduction of the alimony award. Given this thorough financial analysis, I cannot agree with the majority that the conclusion reached by the Court below was clearly erroneous and thus an abuse of discretion:

> "In exercising our power of review, we have the duty to review the sufficiency of the evidence and to test the propriety of the findings below. We do not, however, ignore the findings made by the trial judge. If they are sufficiently supported by the record and are the product of an orderly and logical deductive process, in the exercise of judicial restraint we accept them, even though independently we might have reached opposite conclusions." *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972).

Sitting in the court of first resort, I might well have concluded that a proper alimony award in this case would be something less than $1,000. per month; however, sitting in this Court of last resort, I cannot conclude that the Family Court's determination was "clearly wrong" and that "the doing of justice" requires modification of the award. *Id.* Thus, I would affirm the decision below *in toto.*