Stephen P. QUISENBERRY,* Petitioner,

v.

Gertrude L. QUISENBERRY,*
Respondent.

Family Court of Delaware,
New Castle County.

Submitted July 9, 1982.
Decided July 26, 1982.

\* A pseudonym adopted to protect the privacy of the parties.

Gerald Z. Berkowitz, Wilmington, for petitioner.

Frederick S. Kessler, Wilmington, for respondent.

GALLAGHER, Judge:

Petitioner has moved for an order terminating alimony pursuant to a stipulation of the parties which became an order of this court on August 19, 1981. Paragraph 7 of the stipulated order provides that petitioner will pay alimony to respondent of $500 per month for a period of 24 months unless, earlier, respondent dies, remarries, or cohabits[1] with an unrelated adult male, in which event the alimony terminates. Petitioner avers that respondent has been cohabiting for several months. He contends that on proof that respondent is living with an unrelated adult male the alimony payments terminate. Respondent, on the other hand, argues that while cohabitation would terminate the alimony payments a necessary element of cohabitation is that the person receiving alimony reap financial gain as a consequence of the cohabitation; and that here respondent has not enjoyed resulting financial gain.

Respondent relies upon *Mitchell v. Mitchell*, Me.Supr., 418 A.2d 1140 (1980) and *Grossman v. Grossman*, N.J.Super., 128 N.J. Super. 193, 319 A.2d 508 (1974). But neither case involved a situation where the petitioner was relying on a provision of an agreement between the parties governing circumstances for termination or modification of alimony. So respondent has not really offered the court any authority helpful to her position.

Counsel have not cited to the court any prior decision defining cohabitation. They have, nevertheless, referred to certain decisions that are helpful in approaching the issue *sub judice*. Since they are important in understanding the development of the law with respect to cohabitation reference will be made to three unreported decisions.

I.

*J. Y. S. v. R. H. S.*, Del.Ch., Civil Action No. 4387 (1975), was an action for specific performance of a separation agreement. The chancellor held that cohabitation would not affect support payments which, under the terms of the agreement, would only terminate upon death or remarriage. The court refused to rewrite the agreement to afford the petitioner alimony relief because of cohabitation since that would constitute a rewrite of the agreement. He also refused to equate "cohabitation" with "remarriage."

1. The stipulated order fails to define "cohabits."

It was held in *T. v. T.*, Del.Fam., C.A. 1694 and B–4744 (1977) and *K. C. v. S. K.*, Del.Fam., No. 422 (1979), that absent a court order or agreement to the contrary alimony is not suspended while an alimony recipient is living in a *de facto* marital status with another person. The basis for these decisions is that unless otherwise agreed by the parties in writing and expressly provided in the decree, the statutes only permit modification or termination of alimony upon (1) a showing of real and substantial change of circumstances, (2) death of either party or (3) remarriage of the party receiving alimony. 13 *Del.C.* § 1519(a)(4) and (b).

The Supreme Court of Delaware addressed the cohabitation issue in *Husband B.W.D. v. Wife B.A.D.*, Del.Supr., 436 A.2d 1263 (1981). In that case the Family Court had made an award of alimony under 13 *Del.C.* § 1512. An appeal was taken from the Family Court's refusal to terminate, suspend, or decrease the alimony award. A most interesting situation developed when the justices split in deciding whether Family Court erred in its decision stating (436 A.2d at 1264):

> "The Family Court, at the hearing after remand, also considered new matters, including the husband's petition to terminate alimony, the second issue properly raised on appeal. The basis of the husband's appeal is that the wife was, and apparently is, sharing living quarters with a male friend. The Family Court stated that cohabitation, in and of itself, would not operate to terminate alimony, although it might "constitute a substantial change of circumstances under 13 *Del.C.* § 1519(a)(4)." The Family Court then concluded that no such changes of circumstances existed and, accordingly, did not terminate, suspend nor decrease the alimony award.

> The husband now argues that the Family Court erred in ruling the wife's cohabitation was an insufficient independent

basis for termination of alimony. The four Justices sitting on this case are divided equally on this issue. Two Justices (Justice McNeilly and Justice Quillen) agree with the Family Court's determination that the question to be determined is whether there has been "a real and substantial change of circumstances." Two Justices (Justice Duffy and Justice Horsey), on the other hand, find that alimony should be suspended during the period of this cohabitation. See separate opinions on Issue II. Accordingly, we affirm. *Massey-Ferguson Inc. v. Wells*, Del.Supr., 421 A.2d 1320 (1980)."

■ The case at bar involves a stipulation by the parties that the alimony provided for wife will terminate if she should cohabit with an unrelated adult male. The stipulation so limiting alimony became a court order and is clearly effectual under 13 *Del.C.* § 1519(b).[2] I hold, therefore, that on proof here of cohabitation by the party receiving alimony the payments shall cease and determine without regard to whether as a result of the relationship there has been "... real and substantial change of circumstances" resulting in financial gain. [13 *Del.C.* § 1519(a)(4)]

## II.

■ Surprisingly, it is not easy to find a satisfactory definition of "cohabitation." However, from examining the authorities I define "cohabitation" as a relationship existing when two persons of the opposite sex live together, with some degree of continuity, as though they were husband and wife. Usually, the arrangement is ostensible, the parties engage in sexual relations with each other and financial benefit arises from the relationship; but cohabitation can exist without any of these three factors being present. *See, Black's Law Dictionary* 236 (5th edition 1979).

While financial benefit to the person receiving alimony is normally expected I decline to accept respondent's analysis under

---

**2.** 13 *Del.C.* § 1519(b) provides as follows:

"Unless otherwise agreed by the parties in writing and expressly provided in the decree,

the obligation to pay future alimony is terminated upon the death of either party or the remarriage of the party receiving alimony."

which financial benefit would become a necessary element of cohabitation. I take this view for two reasons. First, the stipulated order fails to define "cohabitation" and certainly does not mention "change in financial circumstances." Secondly, regardless of the state of society's present moral standards, public policy clearly favors the married state and disfavors cohabitation.

■ Persons contemplating cohabitation should be encouraged by the law and public policy to embrace the married state in order to derive the benefits and be subject to the obligations of that state. An adult receiving alimony is presumed to be capable of making a free choice: He or she can choose to avoid those circumstances (other than death) that will result in suspension or termination of alimony. In fairness, where the parties have agreed that cohabitation will affect the right to receive alimony that agreement should be enforced and there should not be engrafted thereon the requirement of change of financial circumstances.[3] In short, the person paying alimony should not be obliged to underwrite a cohabitation relationship where he has contracted against doing so.

### III.

■ It is clear that respondent has been cohabiting with an unrelated adult male. She has known this gentleman since June of 1981, started dating him in March of 1982 and between March 1982 and April 15, 1982, sometimes spent nights with him at his abode while spending other nights at the former marital residence. On April 15, 1982, respondent moved in with her friend. She has not slept at her own home since then but sleeps with him at his residence. About 20% of her clothing is at his residence. They eat dinner together three to four nights a week at his residence and eat dinner out at other times. She does much of the cooking and cleaning up. On only a few occasions has she eaten at her former residence although she stops at that residence every other day to "check on things." Respondent and her friend engage in sexual relations when mutually agreeable. Respondent still has the same expenses for running her home that she did before the cohabitation began.[4] The gentleman does not pay any of her expenses nor does she pay any of his expenses although she does share grocery purchases from time to time. They maintain separate bank accounts. The parties have no marriage plans but it seems likely that they will eventually marry.

Weighing the facts in light of the law I hold that respondent has been cohabiting with an unrelated adult male since April 15, 1982. Therefore, by virtue of the stipulated order, petitioner's support obligation terminated on that date and petitioner is entitled to reimbursement for payments of alimony made since April 15, 1982.

IT IS SO ORDERED.

---

3. The Delaware courts, repeatedly, have refused to rewrite marital agreements. *Harry M. P. v. Nina M. P.*, Del.Supr., 437 A.2d 158 (1981); *Wife, B. T. L. v. Husband, H. A. L.*, Del.Ch., 287 A.2d 413 (1972), affirmed, *Del.Supr.*, 336 A.2d 216 (1975).

4. It would be difficult to perceive direct financial gain to respondent as a result of the relationship. Perhaps some of her own living costs are reduced due to her absence from the former marital home.