GERTRUDE L.Q., Respondent-Appellant,

v.

STEPHEN P.Q., Petitioner-Appellee.

Supreme Court of Delaware.

Submitted: June 27, 1983.

Decided: Sept. 16, 1983.

Frederick S. Kessler, Agostini & Frabizzio, Wilmington for respondent-appellant.

Gerald Z. Berkowitz, Berkowitz, Greenstein, Schagrin & Coonin, P.A., Wilmington, for petitioner-appellee.

Before HERRMANN, C.J., and MOORE and CHRISTIE, JJ.

MOORE, Justice:

This is an appeal of a Family Court order terminating alimony to the appellant-wife pursuant to a stipulated agreement to pay alimony unless the wife cohabited with an unrelated adult male. Viewing the alimony agreement as a contract between the husband and the wife, we enforce the contract by giving the term "cohabit" its ordinary and accepted meaning. Thus, we affirm.

### I.

The parties were divorced on July 21, 1981. Prior thereto, the husband and the wife began negotiations concerning property division, alimony, and attorney's fees.

These negotiations culminated in the execution of a stipulated settlement. Pursuant to that agreement, the husband conveyed certain personal and real property to the wife, while retaining certain personal property for himself. In addition, he agreed to pay alimony to the wife on a monthly basis for two years unless she died, remarried, or cohabited with an unrelated adult male.[1] The word "cohabit" was not defined in the stipulation. The husband paid alimony under the terms of this agreement until May, 1982. On May 24, 1982, he filed a motion in Family Court seeking to terminate alimony payments because of the wife's continuing cohabitation with an unrelated adult male. After a hearing and submission of memoranda, the Family Court terminated alimony retroactive to April 15, 1982. *Quisenberry v. Quisenberry*, Del.Fam.Ct., 449 A.2d 274, 277 (1982). In reaching its decision, the Family Court defined "cohabitation" as a relationship existing when two persons of the opposite sex live together, with some degree of continuity, as though they were husband and wife. *Id.* at 276.[2] Accordingly, the trial court applied paragraph seven of the stipulation and terminated the husband's obligation to pay alimony as of April 15, 1982. *Id.* From this order, the wife appealed.

## II.

The husband and wife were married on October 21, 1960, separated on April 15, 1980, and divorced on July 21, 1981. They have a son, now age twenty, and a daughter, now twenty-one years old. The wife admitted that since April 15, 1982, she had slept regularly with an unrelated twenty-nine year old adult male at his home. The wife also admitted that she had not slept at her residence, the former marital home, since that date. She further conceded that she keeps twenty percent of her wardrobe, including her work clothes, at her friend's residence. The wife also helps with household chores and eats dinner at this man's house three to four nights per week. Finally, the wife testified that she and her friend had "an arrangement" whereby they had "sexual relations with each other depending on the wishes of both". Her testimony was that she viewed the relationship as "an affair".

However, the wife has returned to the former marital home every other day for short visits of an hour or two to "dust and vacuum". She ate dinner at the former marital home on approximately six occasions between April 15 and July 9, 1982, the period between the commencement of her regular sleeping and sexual arrangement with her friend, and the alimony termination hearing before the Family Court.

In appealing the trial court's termination of alimony, the wife admits that "[o]n July 21, 1981, just before a hearing on the contested divorce action was scheduled to begin, the parties reached an agreement in the Family Court waiting room, which agreement was entered on the record, and later reduced to a writing in the form of a 'stipulation'." She contends that the Family Court approval of the stipulation, which merely spelled out the marital property distribution, transformed the agreement into a decree or separate order within the meaning of section 1518 of the Delaware Divorce and Annulment Act of 1979 (Act). *See* 13

1. The stipulation stated in pertinent part:
   IT IS HEREBY STIPULATED by and between Gerald Z. Berkowitz, attorney for husband, hereinafter referred to as Petitioner, and Frederick S. Kessler, attorney for wife, hereinafter referred to as Respondent, subject to the approval of the Court, as follows:
   . . . . .
   7. Petitioner will pay Respondent alimony in the amount of $500.00 per month beginning July 1, 1981, for a period of 24 months unless Respondent dies, remarries *or cohab-* its with an unrelated adult male in which case alimony shall terminate. Respondent waives all other rights to Alimony.

2. The Family Court further stated that "[u]sually the agreement is ostensible, the partners engage in sexual relations with each other, and financial benefit arises from the relationship; but cohabitation can exist without any of these three factors being present." *Id.* at 276 [citing Black's Law Dictionary 236 (5th ed. 1979)].

*Del.C.* § 1518 (1981). The wife argues that given this metamorphosis, the requirements of section 1519 were engrafted into the stipulation. In particular, the wife asserts that subsection 1519(a)(4), which required a showing of real and substantial change of circumstances to permit a termination of any section 1518 order, was incorporated into the stipulation upon its entry. *See* 13 *Del.C.* § 1519(a)(4) (1981). The wife asserts that the Family Court erred in failing to apply the evidentiary standard of section 1519(a)(4) to the husband's motion, and that the husband did not meet his burden of proof under that test. Related to the section 1519(a)(4) argument, the wife contends that there were no changed circumstances, sufficient to meet the standard of section 1519(a)(4), because the wife was not "cohabiting" with her paramour. Thus, the wife suggests that cohabitation should be defined as a de facto marriage, and that her relationship does not meet any such test [citing *Husband, B.W.D. v. Wife, B.A.D.,* Del.Supr., 436 A.2d 1263 (1981)]. Finally, the wife contends that the trial judge erred in defining cohabitation by using his own moral standards, and in so defining the term, violated the constitutional principle of separation of powers.

In response, the husband says that they made an agreement concerning alimony payments, and the Family Court properly enforced the agreement by terminating alimony. The husband further argues that the wife did not challenge the agreement at the termination hearing, and now seeks to assert rights under the Act which were expressly waived by her in the agreement. The effect would be to eliminate those commitments which she now finds onerous, while leaving intact the rest of the agreement which inures to her benefit. As for the term "cohabit", the husband argues that it should be given its plain meaning, which does not require a de facto marriage or financial dependence.

### III.

This Court's standard and scope of review of a Family Court decision was recently stated in *Wife, J.F.V. v. Husband, O.W.V., Jr.,* Del.Supr., 402 A.2d 1202, 1204 (1979) [following *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972)]. We will not disturb the trial judge's findings of fact unless they are clearly wrong and justice requires their overturn. *Id.* As to conclusions of law, our standard of review is abuse of discretion. *Husband, W.H.L. v. Wife, V.L.L.,* 457 A.2d 327 at 330 (Del.Supr.1983).

Section 1502(1) of the Act provides that it is to be "liberally construed and applied ... to promote the amicable settlement of disputes that have arisen between parties to a marriage." 13 *Del.C.* § 1502(1) (1981). This purpose is consistent with pronouncements by the courts of this state. *See, e.g., Wife, B.T.L. v. Husband, H.A.L.,* Del.Ch., 287 A.2d 413, 415 (1972) ("the law thus manifests a preference for the private settlement of marital obligations at the time of separation"). Section 1519(a) specifies the sole grounds for modifying or terminating a divorce or annulment decree or related order. See 13 *Del.C.* § 1519(a)(1–4) (1981). Subsection 1519(a)(4) states that a decree or order of alimony or for other relief awarded may be modified or terminated only upon a showing of real and substantial change of circumstances. 13 *Del.C.* § 1519(a)(4) (1981). The burden is on the party seeking to modify or terminate the decree or order. *Rosario J.L. v. Josephine K.L.,* Del.Supr., 431 A.2d 1256 (1961). The challenging party must show that enforcement of the award would produce an undue hardship to the challenging party or an undue benefit to the other party. *Husband, J. v. Wife, J.,* Del.Fam.Ct., 413 A.2d 1267, 1270 (1979).

Subsection 1519(b) provides for the termination of the duty to pay alimony. *See* 13 *Del.C.* § 1519(b) (1981). It states:

(b) Unless otherwise agreed by the parties in writing and expressly provided in the decree, the obligation to pay future alimony is terminated upon the death of either party or the remarriage of the party receiving alimony.

13 *Del.C.* § 1519(b) (1982). Clearly, subsection 1519(b) contemplates written alimony agreements between parties to a divorce, although § 1519(b) says nothing about incorporating other requirements of the Act into such agreements. The conclusion that § 1519(b) contemplates written alimony agreements is supported by the Act's articulated purpose of promoting settlement of divorce disputes. *See* 13 *Del.C.* § 1519(a)(1) (1981).

■ In this action, the wife and the husband reached an agreement concerning alimony. The agreement was filed on the record as a "stipulation". In *Application of Wilmington Suburban Water Corp.,* a stipulation was defined as "in effect, an agreement or admission made in a judicial proceeding by the parties thereto in respect to same [sic] matter incident to the proceeding for the purpose of avoiding delay, trouble, and expense." *Application of Wilmington Suburban Water Corp.,* Del.Super., 203 A.2d 817, 832 (1964) (citing 50 *Am.Jur.,* Stipulations, § 2, 605–06), *aff'd in part on other grounds,* Del.Supr., 211 A.2d 602 (1965). Similarly, the Family Court properly concluded that the stipulation was an agreement made in a divorce action between the husband and wife in respect of alimony and property distribution. This conclusion is entirely consistent with the purpose of the Act, and with subsection 1519(b). *See* 13 *Del.C.* § 1519(b) (1981). Furthermore, subsection 1512(d) of the Act buttresses this conclusion by providing that any "party who has contractually waived or released his or her right to alimony shall have no remedy under this section". *See* 13 *Del.C.* § 1512(d) (1981). Section 1512(d) impliedly permits contractual modifications of statutory rights; otherwise, it would be mere surplusage. Accepting the wife's interpretation of the stipulation as a court order within the meaning of sections 1518 and 1519 would effectively read out any possibility for private settlement agreements, a result which clearly contravenes the articulated purpose behind the Act. *See* 13 *Del.C.* § 1502(1) (1981). For these reasons, we deem the stipulation to be a contract between the husband and wife concerning alimony.

Delaware follows the well-established principle that in construing a contract a court cannot in effect rewrite it or supply omitted provisions. *Conner v. Phoenix Steel Corp.,* Del.Supr., 249 A.2d 866 (1969) (pension plan). *Accord. In re International Re-Insurance Corp.,* Del.Ch., 86 A.2d 647 (1952) (insurance contract). In the family law context, Delaware courts have refused to rewrite marital agreements. *Harry M.P. v. Nina M.P.,* Del.Supr., 437 A.2d 158 (1981); *Wife, B.T.L. v. Husband, H.A.L.,* Del.Ch., 287 A.2d 413 (1972), *aff'd,* Del.Supr., 336 A.2d 216 (1975). In construing a contract, a court will interpret the contract as a whole and give words in the contract their plain, ordinary meaning. *Pines Plaza Bowling, Inc. v. Rossview, Inc.,* 394 Pa. 124, 145 A.2d 672, 676 (1958) (contract to lease shopping center space). *Accord. City of Augusta v. Quirion,* Me.Supr., 436 A.2d 388, 392 (1981) (paving contract); *Southern New England Contracting Co. v. Norwich Roman Catholic Dioceasan Corp.,* 175 Conn. 197, 397 A.2d 108, 109 (1978) (construction contract arbitration clause).

■ In this action, the agreement between the husband and wife simply states that the husband will pay a certain sum per month for two years unless the wife "cohabits with an unrelated adult male in which case alimony shall terminate". The word "cohabit" is not a term of art, but has a common and accepted meaning as an arrangement existing when two persons live together in a sexual relationship when not legally married. Thus, the Family Court properly found that the wife had been cohabiting with her paramour since April 5, 1982, thereby breaching the agreement with her former husband. Indeed, the wife admitted as much. Given this, plus the failure of the wife to challenge the agreement in any way, the Family Court acted within its discretion in terminating the alimony payments.

In so defining the term "cohabit", we decline to accept the wife's definition of cohabitation as a de facto marriage. The wife bases her definition on *Husband, B.W.D. v. Wife, B.A.D.,* Del.Supr., 436 A.2d 1263 (1981). *B.W.D.,* however, is distinguished from this case because *B.W.D.* did not involve any alimony agreement between the parties.

The wife argues that any result other than one in her favor is an act of judicial moralizing. But that cannot be so, except to say that she must honor her commitments. Thus, we view this alimony agreement as an enforceable contract which has been breached. Accordingly, we enforce the contract as written and therefore affirm.

\* \* \*

AFFIRMED.