**HUSBAND B., Petitioner Below, Appellant,**

v.

**WIFE H., Respondent Below, Appellee.**

Superior Court of Delaware, New Castle.

Submitted July 7, 1982.

Decided Sept. 10, 1982.

Roderick R. McKelvie, (argued), Ashby, McKelvie & Geddes, Wilmington, for appellant.

Walter L. Pepperman, II, (argued) and Eric C. Howard, Morris, Nichols, Arsht & Tunnell, Wilmington, for appellee.

O'HARA, Judge.

## I. FACTUAL SETTING

This case is on appeal from a decision of the Family Court ordering specific performance of child support provisions contained in a separation agreement voluntarily entered into by the parties in 1973. Husband B. resided in Illinois and Wife H. resided in Delaware at the time the agreement was

formed. Husband B. currently resides in New York.

At the time the agreement was made, the parties' two children were of preschool age and were severely afflicted with cystic fibrosis. This medical condition, and the possibility of resultant life-long financial dependency, was specifically contemplated in the separation agreement. The children's physical condition has improved beyond the expectations held in 1973 and, although they still continue to suffer from the disease, their current lifestyle is essentially normal.

At the time of the separation Wife H. was unemployed as she was needed in the home on a full time basis to provide for the special medical needs of the children. The separation agreement addressed only Husband B.'s monetary support responsibility. He agreed to a support payment schedule which was based on a varying percentage of his gross income, ranging from 32% to 40%. The only modifying condition as to this obligation was that the payment percentage would be based on decreased as well as increased income. Additionally, Husband B. agreed to assist in the payment of major medical expenses as well as the expense of college educations for the children.

In 1974, Husband B. entered into another agreement with Wife H. wherein he joined her in the purchase of a home in Delaware in which she and the children lived after the parties' 1975 divorce and until Wife H.'s remarriage.

In 1978, Husband B. appealed to this Court regarding a Family Court order specifically enforcing the agreement. He alleged that the agreement was unconscionable and that changed circumstance as a result of Wife H.'s expected receipt of an approximate $140,000 inheritance mandated modification. This Court found that the agreement was not unconscionable when formed and that the receipt of the inheritance was, as yet, speculative. The Court indicated, however, that should circum-

stances change from those existing at the time of its decision, Husband B. would have the opportunity to reapply to Family Court for modification.

In the current litigation, Husband B. has asserted such changed circumstances in his request for modification of the support agreement. He cites the following facts: Wife H. is receiving installments on the aforementioned inheritance; Wife H. has accumulated significant assets; Wife H. is employed and has income of $18,477.00 per year; the unreimbursed medical costs for the children have decreased dramatically.[1] Husband B. continues to be employed, earning approximately $36,000.00 per year, of which he nets $1,837.85 per month. His current support obligation, according to the separation agreement schedule, is $1,103.36 per month. He is, thus, obligated to pay 60% of his net income in support. He has been paying only $810.00 per month, however, and substantial arrearages have accrued.

Family Court determined that, absent unfairness at inception or impossibility of performance (not contended here), no basis for modification of the agreement exists.

I do not believe Delaware law permits a reduction of contractually incurred child support payments on the basis of changed financial circumstances of either or both parties absent impossibility of performance or unfairness viewed from the inception of the agreement. *Lawrence J.B. v. Bonnie B.H.,* Del.Fam.Ct., No. D–5580 and No. B–2705, at 8 (October 6, 1981).

Family Court ruled that under Delaware law a showing of changed circumstances does not provide a basis for reduction of a child support provision contained in a voluntary agreement. It ordered specific performance of the agreement and a judgment for arrearages.

In reaching its decision, the Family Court analyzed both spousal and child support precedent. It cited *Dumel v. Dumel,* Del.

1. Those costs not reimbursed by Blue Cross and Blue Shield ranged from $3,080.70 in 1979 and $4,423.30 in 1980, to $792.00 in 1981.

Ch., 213 A.2d 859 (1965) and *C. v. A.*, Del. Supr., 379 A.2d 1119 (1977), spousal support agreement cases, to sustain its conclusion that changed circumstances were not grounds for reduction. The Family Court specifically analyzed the treatment Delaware courts have given child support provisions in separation agreements but found no case on point. The cases it reviewed generally consisted of those in which a support obligor was opposing an increase from the contracted amount. The Family Court cited *Coneys v. Coneys*, Del.Supr., 269 A.2d 777 (1969), *G.W.F. v. G.P.F.*, Del.Supr., 271 A.2d 38 (1970), *Wife, B.T.L. v. Husband, H.A.L.*, Del.Ch., 287 A.2d 413 (1972) and *J.W.P. v. R.E.P.*, Del.Ch., 301 A.2d 318 (1973),[2] in concluding that reduction of voluntarily created child support agreements is prohibited.

Family Court also cited *Lanahan v. Nevius*, D.C.App., 317 A.2d 521 (1974), for an express ruling against reduction. In that case, a father requested a decrease in his child support obligation. The District of Columbia Court denied his petition on the basis that it had no authority to rewrite the contract between the parties. The Court there rationalized that it had the power to increase support, because of the underlying legal duty of a parent to adequately support his children, but that it did not have the power to reduce support to the legal minimum where the parties had validly contracted to a higher amount. The focus in that decision was the contractual interests of the parents.

The Family Court noted that the only exceptions to the "rigid" rule of *Lanahan v. Nevius*, were stated in *Wife, B.T.L. v. Hus-*

*band, H.A.L.*, 287 A.2d at 416, "[i]t is, of course, true that Chancery will not enforce a contract that is obviously unfair or oppressive." Since the 1978 proceeding in Superior Court resulted in a finding that the agreement was not unconscionable, the Court below apparently concluded that those exceptions were not before it. Finally, the Court below reasoned that Superior Court had been in error when it raised the availability of future modification on a showing of changed circumstance.

Husband B. has appealed these findings as well as the entry of a judgment for arrearages which included the post-trial period of July, 1981, through December, 1981.

## II. AUTHORITY FOR FAMILY COURT TO MODIFY VOLUNTARY CHILD SUPPORT AGREEMENTS.

■ An appeal from a Family Court decision is based on the record. *Poe v. Poe*, Del.Super., 333 A.2d 403 (1975); Superior Court Civil Rule 72. Thus, the scope of this review extends to an examination of the law applied below. *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, Del.Supr., 402 A.2d 1202 (1979).

■ Family Court has exclusive statutory jurisdiction over support agreements. 13 *Del.C.* § 507(a).[3] Its power in regard to these agreements is as broad as that of an equity court. *Wife, P. v. Husband, P.*, Del. Ch., 287 A.2d 409 (1972). Proceedings may be brought by a support obligee to enforce, modify or terminate a support obligation entered by Superior Court. 13 *Del.C.* § 508(1).[4] Voluntary spousal separation

---

2. In *Wife, B.T.L. v. Husband, H.A.L.*, Del.Ch., 287 A.2d 413 (1972), a reduction was proposed and in *J.W.P. v. R.E.P.*, Del.Ch., 301 A.2d 318 (1973), the father opposed further payments to an adult son.

3. 13 *Del.C.* § 507. Jurisdiction in Family Court; termination of Chancery jurisdiction.
   (a) The Family Court of the State shall have exclusive original jurisdiction over all actions arising under this chapter. The Court shall have exclusive jurisdiction with respect to construction and enforcement of agreements relating to payments for support between spouses, between persons formerly spouses or former

spouses. The Court shall have and exercise all other jurisdiction and powers relating to support and separate maintenance actions heretofore possessed by the Chancellor or the Court of Chancery of the State.

4. 13 *Del.C.* § 508. Jurisdiction in Family Court; enforcement of support orders entered by Superior Court.
   The Family Court of this State has the power to enforce any support order entered by the Superior Court pursuant to Chapter 15 of this title and to modify or terminate the support obligation decreed by any such order within the following limitations:

agreements can be modified upon a "proper showing" of changed circumstance when incorporated into a divorce decree. 13 *Del.C.* § 1519(c).[5] Divorce decrees or orders which contain child support provisions may be modified or terminated only as provided in Chapter 5. 13 *Del.C.* § 1519(a)(1).[6] Chapter 5 requires that a court consider the following factors which it makes an award of child support:

(1) The health, relative economic condition, financial circumstance, income, including the wages, and earning capacity of the parties, including the children;

(2) The manner of living to which the parties have been accustomed when they were living under the same roof;

(3) The general equities inherent in the situation. 13 *Del.C.* § 514.

Additionally, courts have also been held to have the power to grant prospective modification of child support by decreasing, suspending, or terminating awards even when the decree was entirely based on a prior voluntary contract. *See* 61 A.L.R.3rd 657, § 4 (1975).

## III. THE LEGAL STANDARD USED IN ALL CHILD SUPPORT MATTERS.

■ The standard to be used by the Family Court in regard to child support provisions is different from that applied to spousal support agreements. Although contract rules are applicable to voluntary support agreements generally, *see Harry M.P. v. Nina M.P.,* Del.Supr., 437 A.2d 158 (1981), a superseding rule governs child support provisions in the Delaware courts. In *G.W.F. v. G.P.F.,* 271 A.2d at 39, a father unsuccessfully appealed a modifying increase in a voluntary support agreement. He argued that the agreement fixed the payment level. The Court held:

The main thrust of this appeal is that it was error, or at least an abuse of discretion, for the Vice Chancellor to disregard an admittedly valid separation and property settlement agreement in fixing the amount of support for minor children. We think, however, that parents may not, by agreement between themselves, bargain away or adversely affect the right of a minor child to look to his father for support and maintenance. Parents are not precluded from contracting with respect to the support of their children, but they may not, by agreement, prevent *in futuro* the re-examination by a court of the adequacy of the support for minor children agreed upon by the parents. *It is only when the parents' contract is consistent with the welfare and best interests of the child that the agreement for support may be given controlling effect.*

(1) Where a divorce decree has been entered by the Superior Court and, under the terms of such decree, the petitioner therein (respondent herein) has been ordered to make periodic support payments to the Family Court under this section for the enforcement of any such order and for the modification or termination of the support obligation decreed thereby;

5. 13 *Del.C.* § 1519. Modification or termination of decree or order; termination of alimony; enforcement of alimony order.

(c) Any alimony order entered pursuant to § 1512 of this title shall be enforced in this State exclusively by the Family Court in the county wherein the respondent resides or is found, or in the county where petitioner resides if respondent does not reside and cannot be found in this State, regardless of whether such petitioner was the petitioner or the respondent in the divorce action, and such Family Court, on proper showing of either of such petitioner or such respondent or on its own motion, may modify or terminate support obligations formerly decreed by the Superior Court.

Such a changed circumstance may be one which affects a hardship on the obligor, *Mitchell v. Mitchell,* Del.Super., No. 77A–DE–17 (September 7, 1978) (unsuccessful attempt to modify voluntary agreement as to child support because of reduced earnings), or which creates an undue benefit for the obligee and/or an undue hardship to the obligor, *Husband J. v. Wife J.,* Del.Fam.Ct., 413 A.2d 1267 (1979). In *Husband J. v. Wife J.,* the Court analyzed 13 *Del.C.* § 1519 to determine the conditions under which a divorce decree or order may be modified. The Court enunciated a two prong test to determine whether real and substantial change of circumstances had occurred.

6. 13 *Del.C.* § 1519(a)(1).

(a) A decree or separate order entered under § 1518 of this title may be modified or terminated only as follows:

(1) Support for a child, only as provided in Chapter 5 of this title, or otherwise;

39 Am.Jur., Parent and Child § 42, page 653. *This court has repeatedly held that when questions concerning the custody and support of a minor child are involved, the overriding consideration to be given effect is what will best promote the best interests of the child. In re Adoption of A.,* 226 A.2d 823 (Del.1967); *In re C.M.D.,* 256 A.2d 266 (Del.1969); *In re Two Minor Children,* 3 Storey 565, 173 A.2d 876 (Del. 1961).

The appellant does not contest this principle, but says that the Vice Chancellor in the case now on appeal ignored the separation agreement. We think a court may not ignore an agreement for the support of children, but must give it some weight. However, in our opinion, the Vice Chancellor did not ignore the agreement between these parties. He may not approach the issue of child support *de novo* when an agreement is in existence, *but should review the situation as it exists today in the light of the separation agreement.* (Emphasis added).

Thus, even when a support agreement is validly made and not unfair, it may be disregarded if it conflicts with the best interests of the child.

In *Coneys v. Coneys,* supra, also cited by Family Court, an increase in child support was ordered despite a prior agreement to a lower amount. The Supreme Court held that support must be founded upon the former statutes language of "essential needs" and the parents "ability to pay" and concluded that a decision "depend[s] upon the facts of each case." *Id.* at 777. Thus, case precedent requires an analysis of the actual and individual needs of the child rather than the application of a "rigid" rule which focuses on the contractual interests of the parents. In *Wife, B.T.L. v. Husband, H.A.L.,* supra, although Chancery denied re-

duction, it specifically found that the support level was "no more than adequate" and held that a support agreement would be enforced when in the best interests of the child. *Id.* at 416.[7]

■ The Court below found these cases germaine to its decision despite the fact that the form of the requested relief was frequently distinguishable. Therefore, the particular conclusions reached in these cases cannot be used to support a blanket prohibition against reduction. In fact, these cases require that each situation be individualized and, thus, they must be read to preclude any automatic rule against increase *or* decrease. They stand for the proposition that child support modifications must be determined by a weighing of all factors which affect the particular child's interests and that any modification must be made with the purpose of advancing those interests.

Therefore, the rationale of *Lanahan v. Nevius,* supra, does not control the matter before us. The *Lanahan* court focused only on the contractual interests of the parents and did not refer to a superseding "best interests of the child" rule. Delaware decisions and statutes demand a different approach. It would be incongruous to statutorily require Family Court to examine all the equities in a particular case when it originally determines a support award, 13 *Del.C.* § 514(1–3), and to examine those equities on any petition for increase, while requiring that same court to ignore the identical equities when a petition for reduction of a voluntarily contracted award is presented. Further, in a jurisdiction which statutorily distributes the support burden equally between parents, 13 *Del.C.* § 501(c),[8] it would be illogical to prevent consideration of whether that burden was properly allocated in the best interests of

---

**7.** The Family Court also referred to *J.W.P. v. R.E.P.,* Del.Ch., 301 A.2d 318 (1973), but the "child" in that case was not a minor and, therefore, no legal duty existed. Thus, the agreement was controlled only by contract principles.

**8.** Chapter 5 of the Title 13 was revised in 1974. Among the alterations made was an expansion

of the financial duty of support from the father alone to an equal sharing by both parents. 13 *Del.C.* § 501(c): "The duty to support a child under 18 years of age . . . shall rest equally on both parents." *See G.L. v. S.D.,* Del.Supr., 403 A.2d 1121 (1979). The effect of this statutory change on the parties' agreement is not at issue here.

**1170** ■

the children when one of the parents unexpectedly becomes financially capable of sharing the burden that the other has been struggling to carry alone.

 Thus, in this case, Family Court should have made a two part analysis: First, a determination of the contours of the "best interests" of the children should have been made using the 13 *Del.C.* § 514 factors; *G.W.F. v. G.P.F.*, supra. There was no examination below of whether their interests were limited to financial considerations or whether "general equities inherent in the situation" should have been included. 13 *Del.C.* § 514(3).[9] Secondly, if the agreement had been found to serve the children's best interests, the Court should have then evaluated the provisions for fairness. *Wife, B.T.L. v. Husband, H.A.L.*, supra. In the proceeding below, the command of *G.W.F. v. G.P.F.*, supra, was not followed. The Family Court did not review the situation "as it exists today in the light of the separation agreement." Indeed, such a review was precluded by the narrow grounds made available to the petitioner— "impossibility of performance or unfairness from the inception of the agreement." Thus, Family Court did not consider the materially changed, and perhaps totally unforeseeable, circumstances that exist today.

## IV. CONCLUSION.

This Court understands that the "rigid" focus that Family Court maintains in regard to child support serves to reduce friction and provides stability in support matters. The importance of this goal is not minimized by this opinion. However, such concerns cannot preclude consideration of the overall well being of the children.

Therefore, in view of the requirement that any support decision must be founded upon a determination of the best interests of the child, this Court must conclude that the holding below was premised on erroneous legal tenets. The decision must be reversed and the case remanded for further application of the Family Court's special expertise under the principles enunciated herein. Resolution of the arrearages issue will not be undertaken and this issue will also be remanded for consideration in light of the Family Court's subsequent determination.

IT IS SO ORDERED.

9. In *Lucy K.H. v. Carl W.H.*, Del.Fam.Ct., 415 A.2d 510 (1979), the Court analyzed the best interests of child under the 13 *Del.C.* § 514 factors. The parents had informally agreed on child support and stipulated the agreement to the Court. The Court entered that agreement in its order. The husband requested termination of support when the wife breached the agreement by taking the child to live outside the country. The Court determined the needs of the child under the changed circumstances and reduced the support award. The Court reasoned that the need for support from the father had decreased in light of the changed living arrangements and the mother's employment. The Court noted that the reduced award would permit the father to "retain sufficient income to visit the child on a number of occasions each year."