G. SOLIS, Respondent-Appellant,

v.

K. TEA, Petitioner-Appellee and
Cross-Appellant.

Supreme Court of Delaware.

Submitted: April 11, 1983.

Decided: Oct. 27, 1983.

Gerald Z. Berkowitz of Berkowitz, Greenstein, Schagrin & Coonin, P.A., Wilmington, for respondent-appellant.

Stanley C. Lowicki, Wilmington, for petitioner-appellee and cross-appellant.

Before HERRMANN, C.J., HORSEY and MOORE, JJ.

HORSEY, Justice:

The central issue in this domestic relations case is whether an obligation under a separation agreement to provide a private secondary education may be reformed upon a showing of change of financial circumstances adversely affecting the best interest of parent and child.

In this post-divorce proceeding, husband appeals from an Order of Family Court substantially granting wife's petition for specific performance of husband's private school obligation made incident to the couple's divorce but not incorporated in the decree. Husband's primary contention is that Family Court committed reversible error in ruling as a matter of law that a voluntary separation agreement may not be reformed irrespective of a substantial change in husband's financial condition attributable largely to an unforeseeable escalation in private educational costs. Husband also claims error in the Trial Court's finding that the parties had entered into a valid and enforceable separation agreement in 1971.

Wife cross appeals, contending: (1) that the Court erroneously found an oral modification of the 1971 contract; (2) the Court erred in not finding a supplemental oral agreement wherein husband was to provide for "all the needs" of the wife and children; and (3) the Court abused its discretion in denying wife's motion for reargument with respect to (1) and (2) above. We affirm in part, reverse in part and remand for further proceedings consistent herewith.

1. The Separation Agreement provided in pertinent part that:
 6(a) ... In any event, after September 1972, the Husband will be liable for the children's support, and the amount of the children's monthly support payment will be six hundred dollars per month. In addition to the $600.00 per month the Husband will pay 10% of his annual income over $25,000.00 per annum provided the wife has not remarried.
 (b) In addition to the foregoing payments for support, the Husband shall pay:

## I

### A.

The parties were married on August 11, 1961, separated for brief periods in 1969 and 1970 and divorced in January, 1971. Three children were born of the marriage: a son, born in November, 1965; a son, born in May, 1968; and a daughter, born in March, 1970. Wife remarried in 1977 and has retained sole custody of the children.

In 1969, the parties separated for two weeks. During this period husband, a member of the Delaware Bar, drafted a separation agreement at wife's request. The agreement was typed but never executed. In 1970, after a brief separation and in anticipation of a divorce, wife again requested husband to prepare a document delimiting the couple's marital obligations. Accordingly, husband drafted a second contract which the parties executed on January 4, 1971. The document was signed in substantially unaltered form except for certain handwritten changes included by the husband.

Husband alleges that upon execution of the agreement, he instructed wife to review the document with counsel, initial the handwritten changes and return the agreement to him. In addition, wife was to enclose a cover letter indicating her approval of the agreement as revised. Since wife conceded her failure to so approve the final draft, husband sought invalidation of the entire contract for lack of mutual agreement. The Trial Court found that the parties intended to be bound by the 1971 agreement as amended.

Under the terms of the agreement,[1] husband was to make child support payments

 (1) Annual medical, dental, surgical, nursing and hospital expenses incurred for the children ...
 (2) The cost of sending the children to college ...
 (3) Two of the children are now attending private school; and the husband agrees to pay their tuition and bus fare in a private school so long as his annual income is in excess of eighteen thousand dollars.

in the amount of $600 per month in addition to alimony to the extent of 10% of his annual income over $25,000. Further, husband was to pay the private school tuition and bus fare for the couple's three children. The educational charge was extant so long as husband's annual income was in excess of $18,000.

From January, 1971 until sometime in 1972, husband complied with the above terms by paying to the wife the sum of $750 per month. In 1972 and 1973, husband gratuitously increased this monthly figure to approximately $1,080 while continuing to meet the private school expenses for the two older children. Husband's gross income for 1972 and 1973 was between $36,000 and $42,000. His take-home earnings approximated $21,600 and $6,000 respectively.

In 1976, however, husband netted a scant $2,723 on a pre-tax and support income of $37,203. Husband's uncontradicted testimony revealed: (1) a seven-fold increase in private school tuition that was not reasonably anticipated by either party at the contract's inception; (2) that the tuition increase eviscerated husband's income; and (3) that husband's remaining spendable income was insufficient to meet his remaining contractual obligations and his personal financial commitments. Therefore, in 1976, husband requested assistance from his wife with respect to the children's private school expenditures. Wife accordingly assumed the daughter's expenses for the 1976–1978 academic years.

However, in 1979, wife refused to pay the daughter's tuition, claiming that her prior assumption of this cost represented an isolated instance of assistance and not a continuing duty to pay. Wife thereafter filed a petition in Family Court for specific performance of the 1971 agreement. The Trial

Court found that in 1977 the couple orally amended their written contract to reflect the subsequent change in husband's financial circumstances.[2] The Court further concluded that both parties were in breach of the agreement as amended.

### B.

■ This Court's standard and scope of review of an appeal from the Family Court extends to a review of the facts and law as well as to a review of the inferences and deductions made by the Trial Judge. *Wife (J.F.V.) v. Husband (O.W.V., Jr.),* Del.Supr., 402 A.2d 1202, 1204 (1979). We will not disturb findings of fact unless they are clearly wrong and justice requires their overturn. *Id.* Moreover, this Court will not substitute its own opinion for the inferences and deductions made by the Trial Judge where those inferences are supported by the record and are the product of an orderly and logical deductive process. *Id.* Conclusions of law are reviewable. *Husband J.E.T. v. Wife E.M.T.,* Del.Supr., 407 A.2d 532, 533 (1979).

■ Applying this standard to the case *sub judice,* we affirm the Trial Court's findings that: (1) the parties were bound by their 1971 agreement; (2) the parties orally modified such agreement in 1977; and (3) the husband did not enter into an oral agreement to provide for "all the needs" of the wife and children. We conclude from our review of the record that these findings are supported by ample evidence and are the product of a logical deductive process. Further, we find no abuse of discretion by the Trial Judge in his denial of the parties' motions for reargument. However, on the issue of reformation, we find the Trial Court to have erred as a matter of law in declining to consider reformation for

---

2. The modification, as found by the Court, is as follows:

 (1) The husband was to pay $1,000 per month in child support;

 (2) The husband was to pay the school tuition and bus expenses of the two older children; and

 (3) The wife was to pay the school tuition and bus expenses of the youngest child.

 In an Order dated October 30, 1981, the Court modified (3) to require the husband to pay the bus fare for the daughter.

change in circumstances affecting not only the parties but the best interests of the children. Hence, we reverse as to this issue and remand for further proceedings consistent with this Opinion.

### III

The crux of this appeal is the Trial Court's refusal to consider a substantial and unforeseen change in husband's circumstances as a defense to wife's petition for enforcement of the parties' 1971 separation agreement. Husband asserts alternate grounds for reversal.

### A.

■ First, husband urges this Court to apply the modification guidelines of subsection 1519(a)(4)[3] to the facts of this case. 13 *Del.C.* § 1519(a)(4). Subsection 1519(a)(4) compels modification of a decree or order of support where the petitioning party establishes a "real and substantial change of circumstances." 13 *Del.C.* § 1519(a)(4). The standard necessary to warrant statutory modification requires a finding that enforcement of the order would result in an undue hardship to the obligor or an undue benefit to the obligee. *See, e.g., Husband J. v. Wife J.,* Del.Fam., 413 A.2d 1267 (1979). Husband contends that a 750% increase in private school costs justifies revision of the couple's agreement under the prevailing benefit/burden test. Additionally, husband relies on legislative intent enunciated at section 1502 which sets forth the purpose and construction of the Delaware Divorce and Annulment Act, 13 *Del.C.* § 1502. Section 1502 states, in pertinent part:

This chapter shall be liberally construed and applied to promote its underlying purposes, which are:

\* \* \* \* \* \*

(1) To promote the amicable settlement of disputes that have arisen between parties to a marriage. . . .

By virtue of the stated purpose of the Act and the statutory mandate of subsection 1519(a)(4), husband claims it is inconsistent for the Court to refuse to modify a contractual support obligation upon a finding of an unforeseeable change of financial condition where the identical finding would compel judicial adjustment of a support order pursuant to 13 *Del.C.* § 1519(a)(4). We disagree.

■ The modification scheme of section 1519 is limited to a "decree or separate order" entered by the Family Court in a divorce or annulment proceeding. 13 *Del.C.* § 1519. The statutory terms "decree" and "order" are not defined in section 1519 or elsewhere within the Act. We thus construe this language according to its "common and approved usage," 1 *Del.C.* § 303,[4] and find the plain meaning sense of the terms to refer to declarations or directions of a *court* or *judge. Black's Law Dictionary,* 369, 988 (5th Ed.1979). Applying this constructional guideline to a modification determination, we find clear legislative intent to restrict the scope of § 1519 to the revision of support and alimony payments contained in *judicial* decrees, orders or separation agreements merged therewith. This Court will not extend the legislative direction to include the alteration of unincorporated separation contracts. Further, the incongruity which husband attacks is fully consistent with Delaware's manifest preference for the private settlement of marital

---

**3.** Section 1519(a)(4) provides:
 (a) A decree or separate order, entered under § 1518 of this title may be modified or terminated only as follows:
 (4) Alimony or any other relief awarded, only upon a showing of real and substantial change of circumstances.
 13 *Del.C.* § 1518 is entitled "Decree in divorce or annulment proceedings; costs, notice

of entry; effect on mentally incompetent spouse; effect on subsequent petitions; temporary alimony."

**4.** 1 *Del.C.* § 303 provides in part: "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language."

obligations. *See, e.g., Wife, B.T.L. v. Husband, H.A.L.,* Del.Ch., 287 A.2d 413, 415 (1972), *aff'd,* Del.Supr., 336 A.2d 216 (1975). Hence, absent evidence of extenuating circumstances, Delaware courts will not rewrite pre-divorce agreements to reflect a party's changed financial status. *Harry M.P. v. Nina M.P.,* Del.Supr., 437 A.2d 158 (1981); *C. v. A.,* Del.Supr., 379 A.2d 1119 (1977); *Wife, B.T.L. v. Husband, H.A.L., supra.*

### B.

We do find merit in husband's alternative argument for modification. Assuming our rejection of husband's § 1519 argument, the parties concede the applicability of general contract principles to the enforcement of their separation agreement. However, they disagree as to the Trial Court's implicit determination that contract defenses provide the exclusive basis for reformation of a separation agreement not incorporated in a divorce decree.

According to husband, the rule of *Husband B. v. Wife H.,* Del.Super., 451 A.2d 1165 (1982), compels a court to re-examine a party's support responsibilities where the obligor establishes: (1) an unforeseeable downgrading of his financial station; (2) an inability to comply in good faith with the provisions of the parties' separation agreement; and (3) an absence of need by the parties' children for the provisions sought to be enforced.

Here, husband claims that in 1971, at the time the parties entered into their agreement, the annual cost of private secondary schooling was approximately $2,000 for two children; and that by 1975, this figure had increased to over $15,000 a year for three children. Under the terms of the agreement, husband was to assume the private school costs for the couple's three children "... so long as his annual income is in excess of eighteen thousand dollars." Husband contends that by inserting the $18,000 figure as a "floor" to his educational obligation, the couple impliedly did not anticipate a 750% increase in private school expenses.

Further, the record is replete with evidence of husband's generous compliance with his support responsibilities from 1971 until 1976 to the extent that husband incurred significant indebtedness solely to meet his personal financial commitments. The record also reveals that for the period from 1971 until 1977, the dramatic augmentation in private school costs far exceeded any countervailing merit or inflationary wage increments accorded to husband. Finally, husband argues that contract defenses are inapposite where the terms of a support agreement are not consistent with the "best interests of the child." *See G.W.F. v. G.P.F.,* Del. Supr., 271 A.2d 38 (1970). According to husband, the children have no "special needs" warranting their attendance at private school, hence their transfer from a private to a local public institution does not adversely affect their academic development. Husband concludes that the revision of his support obligation to more reasonably reflect his current ability to pay not only serves the children's best interests but also fulfills the couple's contract expectations.

Wife responds that husband had to establish a traditional defense for contract modification: (1) unfairness of the contract at its inception; (2) unconscionability; or (3) impossibility of performance. She contends husband's failure to meet his burden requires his payment of all arrearages due under the agreement. Wife thus urges affirmance of the lower Court holding as a matter of law on the ground that husband's "change of circumstances" defense is "well-settled" by Delaware precedent.

The rule for modification of an unmerged separation agreement was stated by this Court in *C. v. A.,* Del.Supr., 379 A.2d 1119 (1977). That case involved a wife's petition for specific performance of a separation agreement and a husband's defense of "unforseen changes" in his financial condition. In rejecting husband's argument, this Court concluded: "It is settled Delaware law that, in the absence of a provision in a separation agreement to the contrary, an unfavorable change in financial circum-

stances is not a valid defense to specific performance of the agreement." *Id.* at 1120 (citing *Wife, B.T.L. v. Husband, H.A.L.,* Del.Ch., 287 A.2d 413 (1972), aff'd, Del.Supr., 336 A.2d 216 (1975); *J.W.P. v. R.E.P.,* Del.Ch., 301 A.2d 318 (1973); *Dumel v. Dumel,* Del.Ch., 213 A.2d 859 (1965)).

We affirmed the holding of *C. v. A.* in our more recent decision in *Harry M.P. v. Nina M.P.,* Del.Supr., 437 A.2d 158 (1981). In that case, husband sought a reduction in alimony due to the wife's improved financial status. The Trial Court refused to alter the contract amount and we affirmed, reiterating our *C. v. A.* holding that "a change in the financial circumstances of either party does not give the trial court the power to rewrite the contract." *Id.* at 159.

A cursory reading of *C. v. A.* and *Harry M.P. v. Nina M.P.* may explain the Trial Court's rejection of husband's modification argument. However, this Court has engrafted a superseding "best interest of the child" rule onto any review of contractual child support provisions. *See, e.g., G.W.F. v. G.P.F.,* Del.Supr., 271 A.2d 38 (1970); *Coneys v. Coneys,* Del.Supr., 269 A.2d 777 (1969). *See also Husband B. v. Wife H.,* Del.Super., 451 A.2d 1165 (1982). This rule reflects the Court's recognition in matters of child support of an overriding public concern for the protection and promotion of a child's interest. *See In re C.M.D.,* Del. Supr., 256 A.2d 266, 268 (1969); *In re Adoption of A.,* Del.Supr., 226 A.2d 823, 824 (1967); *In re Two Minor Children,* Del. Supr., 173 A.2d 876, 879 (1961). Thus, by invoking this rule, Delaware courts have applied a different standard of review of child support agreements from that applied to spousal support agreements. *See, e.g., G.W.F. v. G.P.F., supra; Coneys v. Coneys,*

*supra; Husband B. v. Wife H., supra.* Since the focus of this dispute is an educational clause for the children's benefit, the "best interest of the child" rule governs this case. Therefore, the Court's reliance on *C. v. A.* and its progeny to enforce the couple's 1971 separation agreement is misplaced. Those cases clearly concerned the modification of alimony obligations and are not dispositive of the reformation of a child benefit obligation.

■ Section 501 of Title 13 imposes a duty to support a minor child equally upon both parents to the extent of the child's "minimum needs." 13 *Del.C.* §§ 501, 701.[5] Settled Delaware law allows a couple to modify this statutory duty by contractually apportioning support obligations via the execution of a separation agreement. However, the contracting parents may not "bargain away" support responsibilities to the detriment of their minor children. *See, e.g., Coneys v. Coneys,* Del.Supr., 269 A.2d 777 (1969). A support agreement between former spouses therefore is binding and enforceable so long as the interests of the child are not adversely affected. *See generally* 67A C.J.S. *Parent and Child* § 60 (1978).

■ Moreover, although a court may not arbitrarily disregard a separation agreement, its power to review the adequacy (or excessiveness) of child support provisions is not "handcuffed" by the existence of a marital contract. *See Stancill v. Stancill,* Md. App., 286 Md. 530, 408 A.2d 1030 (1979). *See generally* 71 A.L.R.2d 1370 (1960). The agreement will be evaluated according to a "best interests of the child" criteria with the terms of the contract being enforced only where they appear to be reasonable

---

**5.** 13 *Del.C.* § 501 provides in part:

(a) The duty to support a child under the age of 18 years, whether born in or out of wedlock, rests primarily upon his parents.

(b) Where the parents are unable to provide a minor child's minimum needs, a stepparent or a person who cohabits in the relationship of husband and wife with the parent of a minor child shall be under a duty to

provide these needs. Such duty shall exist only while the child makes his residence with such stepparent or person and the marriage or cohabitation continues.

13 *Del.C.* § 701 states in part:

(a) The father and mother are the joint natural custodians of their minor child and are equally charged with the child's support, care, nurture, welfare and education.

and fair. *See, e.g., Moulton v. Moulton,* Vt.Supr., 134 Vt. 125, 352 A.2d 680 (1976). This Court stated in *G.W.F. v. G.P.F.,* Del. Supr., 271 A.2d 38 (1970): "... it is only when the parents' contract is consistent with the welfare and best interests of the child that the agreement for support may be given controlling effect." *Id.* at 39. Thus, according to the overwhelming weight of authority,[6] child support contracts demand stricter scrutiny by the courts and bind neither the child,[7] the public,[8] nor the reviewing judicial body.[9]

■ Applying this stricter scrutiny standard to the instant case, we hold that Family Court *may,* in the exercise of its equitable powers, reform a parent's contractual obligation for child support upon an appropriate showing. A modification downward would require proof of an unforeseen adverse change of financial condition due to factors beyond the obligor's control, coupled with a finding that enforcement of the original commitment would not be in the child's best interest, *i.e.,* would likely curtail a future ability of the parent to contribute to the child's support.[10] The broad equitable powers of Family Court to which we refer are found in 13 *Del.C.* § 507.[11]

■ In this case, the Family Court found that in 1977 the couple orally amended their 1971 agreement to reflect the substantial change in husband's financial circumstances. Yet, in making its determination on the question of reformation, the Court refused to consider this evidence, stating that, "This Court is not free to reform a validly executed written agreement, or a valid oral agreement, or an agreement which is both written and oral concerning child support...." [12] The Court then added:

6. *See, e.g., Alves v. Alves,* D.C.App., 346 A.2d 736 (1975); *Cross v. Cross,* Ill.App., 48 Ill. App.3d 1055, 7 Ill.Dec. 12, 363 N.E.2d 933 (1977); *Polk v. Harris,* Md.App., 46 Md.App. 591, 420 A.2d 1004 (1980); *Stancill v. Stancill,* Md.App., 286 Md. 530, 408 A.2d 1030 (1979); *Lambert v. Lambert,* Mo.App., 593 S.W.2d 613 (1980); *Hoff v. Hoff,* N.J.Super., 157 N.J.Super. 503, 385 A.2d 253 (1978); *Minges v. Minges,* N.C.App., 53 N.C.App. 507, 281 S.E.2d 88 (1981); *McKaughn v. McKaughn,* N.C.App., 29 N.C.App. 702, 225 S.E.2d 616 (1976); *Com. ex rel. Morgan v. Carlton,* Pa.Super. 261 Pa.Super. 77, 395 A.2d 950 (1978); *Masse v. Masse,* R.I. Supr., 112 R.I. 599, 313 A.2d 642 (1974); *Korshak v. Korshak,* Vt.Supr., 140 Vt. 547, 442 A.2d 464 (1982); *White v. White,* Vt.Supr., 141 Vt. 499, 450 A.2d 1108 (1982).

7. *See, e.g., Knox v. Remick,* Mass.Supr., 371 Mass. 433, 358 N.E.2d 432 (1976); *Ebel v. Brown,* Mich.App., 70 Mich.App. 705, 246 N.W.2d 379 (1976); *Clayton v. Muth,* N.J.Super., 144 N.J.Super. 491, 366 A.2d 354 (1976). *Cf. Mayfield v. Com. ex rel. Phelps,* Ky.Supr., 546 S.W.2d 433 (1977); *McIntyre v. McIntyre,* N.Y.Fam., 5 F.L.R. 2289 (1979); *Henry v. Russell,* Wash.App., 19 Wash.App. 409, 576 P.2d 908 (1978).

8. *See, e.g., State ex rel. Fabian v. Fabian,* N.H. Supr., 116 N.H. 516, 363 A.2d 1007 (1976); *Gulley v. Gulley,* Utah Supr., 570 P.2d 127 (1977); *Lizotte v. Lizotte,* Wash.App., 15 Wash.App. 622, 551 P.2d 137 (1976).

9. *See Husband B. v. Wife H.,* Del.Super., 451 A.2d 1165 (1982); *Jensen v. Jensen,* Mont.

Supr., 629 P.2d 765 (1981); *Com. ex rel. Morgan v. Carlton,* Pa.Super. 261 Pa.Super. 77, 395 A.2d 950 (1978). *See also* 21 J.Fam.Law 327 (1982–1983). We note that a 1983 Indiana case held that a "private agreement such as this one [an antenuptial contract] cannot usurp the power of the trial judge to determine what is just and reasonable in the division and distribution of the marital estate." *Boren v. Boren,* Ind.Ct.App., 452 N.E.2d 452 (1983).

10. *See also Bria v. Bria,* Pa.Supr., 464 Pa. 247, 346 A.2d 542 (1975); *Com. ex rel. Morgan v. Carlton,* Pa.Super., 261 Pa.Super. 77, 395 A.2d 950 (1982).

11. 13 *Del.C.* § 507. Jurisdiction in Family Court; termination of Chancery jurisdiction.

(a) The Family Court of the State shall have exclusive original jurisdiction over all actions arising under this chapter. The Court shall have exclusive jurisdiction with respect to construction and enforcement of agreements relating to payments of support between spouses, between persons formerly spouses or former spouses. The Court shall have and exercise all other jurisdiction and powers relating to support and separate maintenance actions heretofore possessed by the Chancellor or the Court of Chancery of the State.

12. The Family Court cited an unreported Family Court decision as "clearly explaining" its lack of authority to modify husband's support obligations. This decision was overruled by the Superior Court in September, 1982. *Hus-*

[husband's] contention that the Court has the authority to set aside the respondent's obligations under the written and oral agreements because they are presently unconscionable and unenforceable in light of the financial circumstances created as a result of the increase in tuition *has no basis in law.* (emphasis added).

The Trial Court did not consider whether husband was financially capable of continuing to provide his children with a private school education. Moreover, there was no weighing of the children's welfare according to the reasonableness and fairness of the contract terms. The Trial Court thereby committed reversible error as it failed to apply the overriding equitable tenet which requires evaluation of the support provisions in light of the children's best interests. Therefore, the case must be remanded for further evidentiary findings to permit application of the ruling herein announced.

 In our view, the criteria relevant to the question of whether a parent may be compelled to meet a contractual obligation to provide a private school education for his children include: (1) the financial resources of the obligated parent; (2) the availability of public schools; (3) the special needs and general welfare of the children; and (4) the station, health and age of the parties.[13]

The record before us reflects, at least *prima facie,* a parent who has made a good faith effort to comply, if not overcomply, with the terms of the agreement but who now, due to factors largely beyond his control, is faced with insufficient financial means to pay for such education. The record does not reveal any special educational, physical or psychological needs of the children for private schooling nor does it show an inadequacy in the local public schools. Moreover, it seems reasonably apparent that the parties did not in 1971 foresee the magnitude of the increase in private school tuition or husband's payment of over 70% of his income for child support. Although we leave to the Trial Court the determination of an appropriate ultimate judgment, we would be remiss not to express our reluctance at the prospect of seeing husband "pushed over the financial brink" for the sake of keeping the couple's children in private secondary school without a clear showing of need by the children for such an education. The degree of reformation of the educational clause should be determined from the totality of the circumstances, including, but not limited to, the factors previously noted.

\* \* \*

Affirmed in part; reversed in part; and remanded.

---

band B. v. Wife H., Del.Super., 451 A.2d 1165 (1982).

13. We note that the question of whether a private school education is. "essential" to a child's welfare has not been directly decided. However, the Connecticut Supreme Court, in *Cleveland v. Cleveland,* Conn.Supr., 161 Conn. 452, 289 A.2d 909 (1971) held that "courts have the power to direct one or both parents to pay for private schooling, *if the circumstances warrant.*" (emphasis added). Those cases which denied a parent's obligation to pay the total cost of a private education turned on the failure of the moving party to establish: (1) the obligor's financial ability to assume such costs, *see, e.g., Forman v. Forman,* N.Y.Dom.Rel., 127

N.Y.S.2d 17 (1954); *Holt v. Holt,* Fla.App., 330 So.2d 489 (1976); *Degener v. Degener,* Mo. App., 478 S.W.2d 687 (1972); or (2) a special need or other compelling justification for enforcing such obligation, *Hardisty v. Hardisty,* Conn.Supr., 183 Conn. 253, 439 A.2d 307 (1981). Those cases that have affirmed these contractual provisions are distinguishable from the present case as they involved some showing of special need, *Cappel v. Cappel,* Iowa Supr., 243 Iowa 1363, 55 N.W.2d 481 (1952), or lack of financial impediment by the paying parent, *Savell v. Savell,* Miss.Supr., 213 Miss. 869, 58 So.2d 41 (1952); *Bize v. Bize,* Neb.Supr., 154 Neb. 520, 48 N.W.2d 649 (1951).