LAWRENCE TATUM, Respondent Below-Appellant,
v.
DIVISION OF FAMILY SERVICES, Petitioner Below-Appellee.
No. 112, 2008.
Supreme Court of Delaware.
Submitted: June 25, 2008.
Decided: July 23, 2008.
Before HOLLAND, BERGER and JACOBS, Justices.

ORDER[1]
CAROLYN BERGER, Justice.
This 23rd day of July 2008, it appears to the Court that:
(1) The respondent-appellant, Lawrence Tatum ("Father"), through his trial counsel, has filed an appeal from the Family Court's February 8, 2008 order terminating his parental rights in his daughter, Jenna Tatum, born December 5, 2006.[2] Tatum's counsel filed a motion to withdraw on the ground that she is unable to present a meritorious argument in support of the appeal. At the Court's direction, Tatum's counsel submitted an opening brief. Despite proper notification,[3] Tatum did not provide his counsel with any arguments in support of the appeal. The petitioner-appellee, the Division of Family Services ("DFS"), and the Court Appointed Special Advocate ("CASA"), have responded to the opening brief and have moved to affirm the Family Court's judgment. We agree with the position taken by DFS and CASA and AFFIRM the Family Court's judgment.
(2) The record, including the transcript of the November 15, 2007 termination hearing, reflects the following. Jenna was born at home on December 5, 2006. After being taken to St. Francis Hospital in Wilmington, Delaware, she tested positive for cocaine and marijuana. On December 6, 2006, Jenna entered foster care. On December 13, 2006, the Family Court held a preliminary protective hearing. Both Mother and Father appeared and stipulated that Jenna was a dependent child.[4] They agreed to Jenna's placement with a caretaker who operated a daycare center out of her home.[5] Jenna has remained with that caretaker up until the present.
(3) Mother visited with Jenna once in January 2007. Mother requested more visitation in May 2007, but, when DFS attempted to call her back to arrange the visitation, her number had been disconnected. Mother's current whereabouts are unknown. There are several outstanding warrants for her arrest. Despite proper notification, Mother failed to appear for the termination hearing.
(4) Father signed a reunification case plan on April 11, 2007. While the assigned social worker testified that Father was "sincere" in his desire to be reunified with Jenna, he was not able to complete the plan. Father failed to complete paternity testing. He had several contacts with Jenna, but did not maintain a regular visitation schedule. In July 2007, Father reported to the social worker that he had been employed in Virginia, Maryland, and Georgia, but failed to provide any proof of employment as required by the plan. Father failed to complete substance abuse treatment. He entered a drug treatment program in February 2007, but left the program several days later. In April 2007, Father told the social worker he wanted to enter another drug treatment program, but failed to appear for the scheduled initial assessment.
(5) In October 2007, DFS filed a petition to terminate Mother and Father's parental rights on the basis of their failure to plan adequately for Jenna's physical needs or mental and emotional health and development.[6]
The termination hearing was held on November 15, 2007.[7] DFS presented six witnesses in support of its petition to terminate parental rightsa social worker from St. Francis Hospital, a DFS investigator, a DFS social worker, a counselor with Brandywine Counseling, a family crisis therapist at DFS, and a permanency worker at DFS. DFS presented evidence that Jenna has been with her current caretaker since December 2006, that she has bonded with the caretaker, and that the caretaker plans to adopt Jenna.
(6) Father appeared and was represented by counsel. Father testified that he opposed termination of his parental rights. He stated that he had been clean and sober for 18 months, that he had purchased items for Jenna, which he left with his sister, and that he had seen Jenna approximately two months prior to the hearing. He denied that DFS requested him to supply proof of employment. Father stated that he did not believe he had neglected or failed to plan for Jenna.
(7) The Family Court may terminate parental rights if DFS proves by clear and convincing evidence the existence of a statutory basis for termination,[8] and that termination is in the best interests of the child.[9] When termination is based upon failure to plan, as in this case, DFS must also prove by clear and convincing evidence the existence of one or more additional statutory elements,[10] and that DFS made bona fide reasonable efforts to reunite the family.[11]
(8) In an appeal from an order of the Family Court terminating parental rights, this Court will uphold the Family Court's factual findings if they are sufficiently supported by the record and are not clearly wrong.[12] To the extent that the Family Court's rulings implicate questions of law, this Court will exercise de novo review.[13] This Court will not disturb inferences and deductions that are supported by the record and that are the product of an orderly and logical deductive process.[14]
(9) We have carefully reviewed the record in this case. There is clear and convincing evidence in the record logically supporting the Family Court's decision to terminate Father's parental rights on the ground of a failure to plan.[15] Father did not complete a single element of his case plan. He visited Jenna only sporadically, did not set up a visitation schedule, and had not seen her for approximately two months prior to the termination hearing. The record further supports the Family Court's finding that DFS made bona fide reasonable efforts to reunite Father with Jenna.[16] In particular, the record reflects that DFS made extraordinary efforts to assist Father with his drug problem, but that Father was unable to follow through. Finally, the record supports that it is in Jenna's best interests for Father's parental rights to be terminated.[17] The record reflects that Jenna has no relationship with Father and that she has thrived with her current caretaker, who plans to adopt her.
NOW, THEREFORE, IT IS ORDERED that the motions to affirm of DFS and CASA are GRANTED. The judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.
NOTES
[1] By Order dated March 6, 2008, the Court sua sponte assigned pseudonyms to the parties. Supr. Ct. R. 7(d).
[2] Supr. Ct. R. 26.1. The Family Court also terminated the parental rights of Jenna's mother ("Mother"), who has not filed an appeal.
[3] Supr. Ct. R. 26.1(a).
[4] Del. Code Ann. tit. 10, § 901(8).
[5] Previously, in July 2005, Mother and Father had consented to placement of their older daughter, Ellen, in foster care.
[6] Del. Code Ann. tit. 13, § 1103(a) (5).
[7] The date of December 13, 2007 also was reserved for additional testimony, in the event that Mother could be contacted. Despite proper notification, Mother did not appear on that date, either.
[8] In re Stevens, 652 A.2d 18, 24 (Del. 1995).
[9] Shepherd v. Clemens, 752 A.2d 533, 536-37 (Del. 2000); Del. Code Ann. tit. 13, §§ 1103(a) and 722(a).
[10] In re Stevens, 652 A.2d at 24; Del. Code Ann. tit. 13, § 1103(5).
[11] In re Hanks, 553 A.2d 1171, 1179 (Del. 1989).
[12] In re Stevens, 652 A.2d 18, 23 (Del. 1995).
[13] In re Heller, 669 A.2d 25, 29 (Del. 1995).
[14] Solis v. Tea, 468 A.2d 1276, 1279 (Del. 1983).
[15] Del. Code Ann. tit. 13, § 1103(5). There also is clear and convincing evidence in the record that Jenna came into the care of DFS as an infant and remained there for over six months. Del. Code Ann. tit. 13, § 1103(5) a. 1.
[16] In re Hanks, 553 A.2d 1171, 1179 (Del. 1989).
[17] Del. Code Ann. tit. 13, §722(a).