IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JOHN FIELDER,[1] | § | |
| | § | No. 325, 2019 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CK17-03962 |
| AUDREY FIELDER, | § | Petition No. 17-35360 |
| | § | |
| Petitioner Below, Appellee. | § | |

Submitted: January 10, 2020
Decided:    March 9, 2020

Before **SEITZ**, Chief Justice; **TRAYNOR** and **MONTGOMERY-REEVES**, Justices.

# **O R D E R**

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The appellant ("Ex-Husband") filed this *pro se* appeal from a Family Court order resolving matters ancillary to Ex-Husband's divorce from the appellee ("Ex-Wife"). We conclude that the Family Court did not abuse its discretion and affirm the judgment of the Family Court.

(2)    The parties were divorced by decree of the Family Court on March 27, 2018. The court retained jurisdiction to resolve the parties' disputes concerning

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

property division and alimony. The Family Court held hearings on the ancillary matters on March 4, 2019 and March 12, 2019. Both parties were represented by counsel at the hearings. After considering the evidence presented and the factors set forth in 13 *Del. C.* §§ 1512 and 1513, the court entered an order dividing the marital property and ordering Ex-Husband to pay alimony to Ex-Wife in the amount of $1,000 per month for seventy-five months.

(3) In his *pro se* appeal, Ex-Husband raises several claims of error concerning the alimony award. He argues that the Family Court erroneously imputed insufficient income to Ex-Wife; excluded certain vehicle expenses and tax-debt payments from the calculation of Ex-Husband's expenses; and failed to consider Ex-Husband's post-trial loss of employment. He does not challenge the property-division award, but he argues that Family Court should have included payments for the tax debt when calculating the parties' expenses for purposes of awarding alimony.

(4) Under the alimony statute, 13 *Del. C.* § 1512, the Family Court must consider "all relevant factors," including the enumerated statutory factors, when determining whether a party seeking alimony is dependent and calculating alimony if dependency is found.[2] In an appeal from an award of alimony, this Court reviews the facts and the law, as well as the inferences and deductions made by the Family

---

[2] *Glanden v. Quirk*, 128 A.3d 994, 1002 (Del. 2015).

Court judge.[3]  This Court will not disturb findings of fact unless they are clearly erroneous.[4]  "Moreover, this Court will not substitute its own opinion for the inferences and deductions made by the Trial Judge where those inferences are supported by the record and are the product of an orderly and logical deductive process."[5]  We review conclusions of law *de novo*, but if the court correctly applied the law, then we review the decision for an abuse of discretion.[6]  "The standard of review for an abuse of discretion is whether the Family Court's decision was arbitrary or capricious."[7]

(5)  Ex-Husband's first argument on appeal is that the Family Court erred by attributing income to Ex-Wife at minimum wage, rather than a higher amount, when determining whether Ex-Wife was dependent and determining the amount of alimony.[8]  The record reflects that, at the time of trial, Ex-Wife was working part-time at a restaurant, earning approximately $11,000 to $15,000 per year, and that she had been seeking other employment.  The Family Court found that Ex-Wife was

---

[3] *Wright v. Wright*, 49 A.3d 1147, 1150 (Del. 2012).
[4] *Id.*
[5] *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983).
[6] *Wright*, 49 A.3d at 1150.
[7] *Id.*
[8] *See* 13 *Del. C.* § 1512(b) (permitting an award of alimony if the party seeking alimony is "dependent" on the party from whom alimony is sought because, among other requirements, the requesting party "[i]s unable to support himself or herself through appropriate employment"); *id.* § 1512(c) (setting forth factors for consideration when determining the amount of alimony, including "[t]he financial resources of the party seeking alimony, including . . . his or her ability to meet all or part of his or her reasonable needs independently").

underemployed and attributed to her full-time, minimum-wage income of $8.75 per hour for forty hours per week, or approximately $18,200 per year.[9] Ex-Husband argues that Ex-Wife's "potential income in the open market with her skill set is between $40,000 to $65,000."[10] Although Ex-Wife testified that she had applied for one job with a salary in that range, she had not been offered that position at the time of trial. The Family Court based its income attribution on the fact that Ex-Wife had not worked for years leading up to the parties' separation, and since the separation she had earned less than she would have earned in a full-time position at minimum wage. The Family Court's findings were not arbitrary or capricious, and the court did not err in attributing Ex-Wife with full-time income at minimum wage, rather than a higher amount.[11]

(6) Ex-Husband's second argument on appeal is that the Family Court erred by excluding from his expenses a car payment for a Nissan that he acquired after the parties' separation. The Ex-Husband's reported expenses at trial included payments for a Nissan Sentra, a Chevrolet Colorado, and a Yamaha motorcycle. The Family Court excluded the payments on these vehicles because "he is not paying the

---

[9] File No. CK17-03962, Petition No. 17-35360, Mem. Op. at 22 (Del. Fam. Ct. June 24, 2019) [hereinafter "Family Court Order"].

[10] Opening Brief at 2.

[11] *See Wright v. Wright*, 49 A.3d 1147, 1152 (Del. 2012) (affirming Family Court's decision not to attribute ex-husband with higher income based on previous occupation as a field engineer because he had changed occupations and had not worked as a field engineer in more than ten years).

Nissan payment and he acquired the Chevrolet payment and Yamaha payment post-separation despite the preliminary injunction against purchases."[12]

(7)     The court's statement that Ex-Husband was not making the Nissan payment appears to be based on a misapprehension regarding the vehicle at issue. The parties had a different Nissan (the "Old Nissan") before separation, which the court determined Ex-Husband had given to Ex-Wife after separation, and which Ex-Wife then sold.[13]  After the divorce, Ex-Husband had remarried and acquired another Nissan (the "New Nissan"), which his new wife drove to work.[14]  The Nissan payment that Ex-Husband included in his expenses appears to be for the New Nissan, not for the Old Nissan that was sold.

(8)     Despite the misapprehension regarding the Nissan in the Family Court order, we conclude that the exclusion of the Nissan payment from Ex-Husband's expenses does not warrant reversal.  The Family Court clearly intended to exclude from Ex-Husband's expenses the payments related to vehicles that he acquired post-separation,[15] and Ex-Husband acknowledges that he acquired the New Nissan after separation.  Moreover, as the Family Court noted, Ex-Husband included in his expenses the costs of his expanded household, which included his new wife and step-

---

[12] Family Court Order, *supra* note 9, at 27.

[13] *Id.  See also* Transcript of Mar. 4, 2019 Hearing, at 34-35; Transcript of Mar. 12, 2019 Hearing, at 65-68.

[14] Reply Brief at 4.  *See also* Transcript of Mar. 12, 2019 Hearing, at 20, 50, 78-80, 82.

[15] Family Court Order, *supra* note 9, at 27.

daughter, without accounting for his new wife's financial contributions to the household.[16]  Therefore, exclusion of the payment for the New Nissan from Ex-Husband's expenses did not constitute reversible error.[17]

(9)    Ex-Husband's third argument on appeal is that the Family Court erred by excluding from Ex-Husband's claimed expenses a payment for the parties' IRS tax debt.  After considering the evidence regarding this debt, the Family Court determined that the debt was marital debt, that Ex-Husband would be responsible for 65% of the debt, and that Ex-Wife would be responsible for 35% of the debt.  Ex-Husband does not challenge the Family Court's apportionment of the debt between the parties; rather, he asserts that the Family Court should have included a proportionate payment on the debt in the parties' monthly expenses for purposes of determining the alimony award.  Ex-Husband did not fairly present this argument to the Family Court in the first instance, and we therefore will not consider it for the first time on appeal.[18]  In any event, the Family Court apportioned the debt in the property-division portion of its order; the court excluded the payment from Ex-Husband's claimed expenses because it found that Ex-Husband had not been paying the debt since the parties' divorce and noted that the court could not control the

---

[16] Family Court Order, *supra* note 9, at 26-27, 28.
[17] *See Unitrin v. Am. Gen. Corp.*, 651 A.2d 1361, 1390 (Del. 1995) ("[T]his Court may affirm on the basis of a different rationale than that which was articulated by the trial court.").
[18] DEL. SUPR. CT. R. 8.

Internal Revenue Service's collection of the debt; and inclusion of a proportionate payment in Ex-Wife's monthly expenses would have increased the amount of the discrepancy between her expenses and her income. We find no reversible error on this issue.

(10) Finally, Ex-Husband contends that the Family Court erred by not considering his post-trial loss of employment. The Family Court's order is dated June 24, 2019 and was docketed June 28, 2019. Ex-Husband claims that his change in employment status was effective on June 28, 2019 and that at some unspecified time after June 14, 2019, he "approached" Family Court "for guidance on how to proceed." Ex-Husband acknowledges that he did not file any motion addressing his employment status before or after the Family Court's decision. Ex-Husband did not fairly present the issue of his loss of employment to the Family Court, and we will not consider it for the first time on appeal.[19] If Ex-Husband believes that the change in his job status warrants a modification of the alimony award, he must first seek relief from the Family Court.[20]

---

[19] *Id.*

[20] *See* 13 *Del. C.* § 1519 (a)(4) (providing for modification of an alimony award "only upon a showing of real and substantial change of circumstances").

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family

Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice